RAINWATER et al., doing business as R. S. RAIN-
WATER & SONS, et al. v. UNITED STATES.

No. 276.   Argued April 2, 1958.—Decided May 26, 1958.

*Leon B. Catlett* argued the cause and filed a brief for petitioners.

*Assistant Attorney General Doub* argued the cause for the United States.   With him on the brief were *Solicitor General Rankin* and *Samuel D. Slade*.

Mr. Justice Black delivered the opinion of the Court.

This case involves two related suits by the United States to recover damages and forfeitures under the civil provisions of the False Claims Act.[1]   In each instance

---

[1] R. S. § 3490 (1878): "Any person . . . who shall do or commit any of the acts prohibited by any of the provisions of section fifty-four hundred and thirty-eight [R. S. § 5438 (1878)] shall forfeit and pay to the United States the sum of two thousand dollars, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act . . . ."

R. S. § 5438 (1878): "Every person who makes or causes to be made, or presents or causes to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing

the complaint alleged that the defendants had success-
fully presented false applications for crop loans to the
Commodity Credit Corporation, a wholly owned govern-
ment corporation. The defendants moved to dismiss the
complaints, arguing that a claim against Commodity
was not a claim "against the Government of the United
States, or any department or officer thereof" as required
by the Act. The District Court granted the motions to
dismiss, but the Court of Appeals reversed and remanded
for trial. 244 F. 2d 27. Because of a conflict in the cir-
cuits [2] we granted certiorari, 355 U. S. 811, solely to con-
sider whether false claims against Commodity are covered
by the False Claims Act.

Commodity is an "agency and instrumentality of the
United States, within the Department of Agriculture,
subject to the general supervision and direction of the
Secretary of Agriculture." [3] It was created by Congress
to support farm prices and to assist in maintaining and
distributing adequate supplies of agricultural commodi-
ties. Its capital was provided by congressional appro-
priation. Any impairment of this capital, which at
times has been great due to the nature of its activities,[4]
is replaced out of the public treasury; any gains are
returned to that treasury. All of its officers and other
personnel are employees of the Department of Agricul-
ture and are compensated as such. Like other govern-
ment corporations, Commodity is subject to the provi-
sions of the Government Corporation Control Act which

such claim to be false, fictitious, or fraudulent . . . shall be impris-
oned at hard labor for not less than one nor more than five years, or
fined not less than one thousand nor more than five thousand dollars."

[2] See *United States* v. *McNinch,* 242 F. 2d 359, cert. granted, 355
U. S. 808, reversed in part and affirmed in part, *post,* p. 595.

[3] See the Commodity Credit Corporation Charter Act, 62 Stat.
1070, as amended, 15 U. S. C. § 714 *et seq.*

[4] See, *e. g.,* 67 Stat. 222; 70 Stat. 238.

provides such close budgetary, auditing and fiscal controls that little more than a corporate name remains to distinguish it from the ordinary government agency.[5] In brief, Commodity is simply an administrative device established by Congress for the purpose of carrying out federal farm programs with public funds.

In our judgment Commodity is a part of "the Government of the United States" for purposes of the False Claims Act.[6] That Act was originally passed in 1863 after disclosure of widespread fraud against the Government during the War Between the States. It seems quite clear that the objective of Congress was broadly to protect the funds and property of the Government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were made. Cf. *United States ex rel. Marcus* v. *Hess*, 317 U. S. 537, 544–545.[7] By any ordinary standard the language of the Act is certainly comprehensive enough to achieve this purpose. In reaching our conclusion, we are aware that the civil portion of the Act incorporates, as a test of liability, the provisions of the criminal section as they were set out in § 5438 of the Revised Statutes of 1878,[8] and that according to

[5] 59 Stat. 597, as amended, 31 U. S. C. § 841 *et seq.*

[6] Cf. *Cherry Cotton Mills, Inc.,* v. *United States,* 327 U. S. 536; *Inland Waterways Corp.* v. *Young,* 309 U. S. 517; *Emergency Fleet Corp.* v. *Western Union Telegraph Co.,* 275 U. S. 415.

[7] See Cong. Globe, 37th Cong., 3d Sess. 952–958. Cf. H. R. Rep. No. 2, Part 2, 37th Cong., 2d Sess.

[8] Originally Congress provided both criminal and civil sanctions in the same statute. 12 Stat. 696. By the Revised Statutes of 1878 the civil sanctions were codified as § 3490, while the criminal provisions were separately enacted as § 5438. Section 3490 permitted the Government to recover forfeitures and damages for those acts prohibited by § 5438, *e. g.,* submission of false or fraudulent claims "against the Government of the United States, or any department or officer thereof." See note 1, *supra.* The civil provisions as enacted in § 3490 have never been altered.

familiar principles the scope of these provisions should be confined to their literal terms. Yet even penal provisions must be "given their fair meaning in accord with the evident intent of Congress." *United States* v. *Raynor,* 302 U. S. 540, 552.

In 1918 Congress amended the criminal provisions of the False Claims Act so that they explicitly prohibited false claims against "any corporation in which the United States of America is a stockholder." [9] Petitioners contend that this amendment shows that the criminal provisions had not previously covered government corporations. From this they argue—relying on the rule that incorporation of a statute by reference generally does not include subsequent amendments to that statute—that the civil provisions, which have never been amended, also do not cover false claims against such corporations.

Despite its surface plausibility this argument cannot withstand analysis. At most, the 1918 amendment is merely an expression of how the 1918 Congress interpreted a statute passed by another Congress more than a half century before. Under these circumstances such interpretation has very little, if any, significance. Cf. *Higgins* v. *Smith,* 308 U. S. 473, 479–480; *United States* v. *Stafoff,* 260 U. S. 477, 480. Aside from this, the language of the 1918 amendment as well as its background indicates that Congress was primarily concerned with protecting certain government corporations, like the United States Shipping Board Emergency Fleet Corporation, chartered under local laws and organized so that private parties could share stock ownership with the United States. See 39 Stat. 731; *United States* v. *Bowman,* 260 U. S. 94, 101–102. Any expression of congressional opinion regarding that type of corporation is of little value in deciding the applicability of the False Claims Act to a

---

[9] 40 Stat. 1015.

wholly owned and closely controlled government instrumentality like Commodity.

None of the cases relied on by petitioner call for a result different from the one we reach. *Pierce* v. *United States,* 314 U. S. 306, where the Court refused to apply a statute making criminal the impersonation of an officer of the United States to a person posing as an officer of the Tennessee Valley Authority, concerned another statute enacted for other purposes.[10]   Moreover, it rested in substantial part on the fact that the TVA Act specifically listed a number of federal criminal statutes as applicable to TVA operations but omitted the false impersonation statute.   The cases presenting questions of governmental immunity, *e. g., Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U. S. 381, or intragovernmental organization, *e. g., United States ex rel. Skinner & Eddy Corp.* v. *McCarl,* 275 U. S. 1, involved nothing more than a search for congressional purpose with respect to the problems then before the Court.

*Affirmed.*

---

[10] Also see *United States* v. *Strang,* 254 U. S. 491. Compare *United States* v. *Walter,* 263 U. S. 15, 18, and *Emergency Fleet Corp.* v. *Western Union Telegraph Co.,* 275 U. S. 415.