### UNITED STATES
### v.
### CATO BROTHERS, INCORPORATED.
#### Civ. A. No. 1841.

United States District Court
E. D. Virginia,
Richmond Division.
July 24, 1959.

John M. Hollis, U. S. Atty., Norfolk, Va., for Government.

A. C. Epps, Richmond, Va., for defendant.

STERLING HUTCHESON, District Judge.

This proceeding has a somewhat lengthy history. The facts may be briefly stated.

On October 28, 1953, the United States (hereinafter referred to as the Government) filed a complaint, which was amended on October 1, 1954. In substance, the Government alleges that during the 1948 crop year the defendants who were cotton dealers and ginners at Emporia, Virginia, violated what is referred to as the False Claims Act (31 U.S.C.A. § 231), in connection with the 1948 Cotton Loan Program. Specifically, under that program the producer of cotton was able to obtain a loan by tendering a note and agreement, listing the warehouse receipt numbers and description of the cotton and pledging such receipt as security for the loan. These documents contained representations by the person executing the same to the effect that he had produced the cotton and that the benefits of the loan had not been transferred to any other party. The defendant, Cato Brothers, Incorporated, was authorized by the Commodity Credit Corporation, an agency of the Government (hereinafter referred to as C.C.C.), to make loans to producers of cotton upon tender by the producers of such documents. Defendant would then be reimbursed by C.C.C. During the regular

course of business the defendants (consisting of the corporation and certain individuals), instead of making loans to certain producers of cotton, purchased the cotton, paying therefor the current market price. They then obtained from such producers their signatures to notes in blank. Thereupon, the defendants filled in and submitted the notes and warehouse receipts to C.C.C. and obtained the respective amounts which would have been paid to the producers. Those amounts were substantially the current price. Thus, the producer sold his cotton to the defendants and received the current market price therefor. The defendants, in turn, received from C.C.C. the current market price in the form of a loan, but they stood to receive such benefits as might accrue in event the price of cotton advanced. The defendant filed an answer and a counterclaim, which counterclaim was based upon a transaction concerning the sale of certain Crimson Clover seed, in connection with which the plaintiff was indebted to the defendants in the sum of $1,150.24, with interest from January 1, 1953. The correctness of this claim was not seriously contested but the reason for withholding payment was due to the controversy concerning the cotton loan notes.

There was an extended hearing, as a result of which this Court found that the defendants were jointly and severally liable in the amount of $60,000, representing a penalty of $2,000 for each of thirty letters transmitting notes; and that the defendants were entitled to recover the amount demanded in the counterclaim.

During the hearing it developed that when the transaction was brought to the attention of the defendants, an offer was made by them to repurchase the notes for such amount as would save the Government harmless so far as possible loss was concerned. That offer was refused. It is not clear why the Government representatives refused to accept reimbursement. It was further shown by the evidence that after the loans were made there was a substantial increase in the price of cotton, which was attributed to the hostilities in Korea. Whatever may have been the underlying reasons, the offer of the defendants was rejected and the cotton was held by the C.C.C. over an extended period of time, during which a profit would have been realized had the Government representatives disposed of the cotton on the market, or, in the alternative suggested by the defendants, the Government would have been saved any possible loss from the transaction by the redemption of the notes by the defendants. With the passage of time and inaction on the part of the Government representatives, the price of cotton declined and eventually there was a net loss to the Government of $29,930.09. I held that this was not recoverable because of the failure of C.C.C. to either sell the cotton or accept the offer of the defendants and thereby mitigate the damages. There was no error assigned as to that ruling and the judgment has now become final. In the transaction the defendants realized $8,079.10 profit, being the difference between the amounts paid by them to the producers and the loan prices received by them from C.C.C. This seems attributable to market fluctuations between the date of purchase and the submission of the notes to C.C.C. There was an additional item of $129.29, received by the defendants as interest paid by the C.C.C. Thus there was a total profit to the defendants of $8,208.39.

When the case was before me for consideration, it was my view that the total forfeitures provided by statute represented an excessive penalty and that the remedy afforded the plaintiff should be commensurate with the profit of the defendants. However, in view of the language in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, I concluded that I was then without authority to remit any part of the forfeiture but should enter judgment in the amount of $2,000 for each letter of transmittal, making a total of $60,000. This was done.

There was an appeal to the United States Court of Appeals, Fourth Circuit, which was reported in 242 F.2d 359.

From the decision of that Court certiorari was granted by the Supreme Court and under the style of United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001, the Supreme Court reversed the Court of Appeals. See also Rainwater v. United States, 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996. Thereafter, the Court of Appeals considered the case further in view of the opinion of the Supreme Court. See Toepleman v. United States, 4 Cir., 263 F.2d 697. Subsequently, the mandate from the Court of Appeals affirming the judgment of this Court was received on May 25, 1959. On July 8, 1959, the defendants filed a motion to vacate the judgment under Federal Rule of Civil Procedure 60(b)(6), 28 U.S.C.A., on the ground that the enforcement of judgment would cause extreme hardship and injustice and that it should be vacated in the exercise of a sound discretion by this Court.

The Government questions the authority and power of this Court as the proper forum to hear the motion and assuming this Court is the proper forum asserts that it has no authority or power to vacate the judgment or any portion thereof. It is further contended that the forfeiture is not unreasonable.

The problem presented appears to be a novel one. No case directly in point has been called to my attention. In Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, the Supreme Court discussed the power of the District Courts under Rule 60(b) and this is also briefly referred to by the United States Court of Appeals, Fourth Circuit in Webb v. United States, 1959, 264 F.2d 888. Neither opinion appears relevant. It follows that in the absence of precedent it becomes necessary to consider the case upon reason and principle.

■ At the outset it must be borne in mind that the judgment is for a forfeiture. While a forfeiture is civil in nature, it bears a striking resemblance to a criminal penalty. The degree of proof required in a forfeiture proceeding is a preponderance of the evidence instead of proof beyond a reasonable doubt as in a criminal case. See United States ex rel. Marcus v. Hess, supra; Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, and United States v. Grannis, 4 Cir., 172 F.2d 507. A forfeiture is also closely related to punitive damages in a civil action, the difference being that the jury or the Court determines the amount of punitive damages as shown justified by the evidence, whereas a forfeiture is fixed in amount by statute. See Toepleman v. United States (Cato Bros., Inc. v. United States), 263 F.2d 697, supra. In considering the scope of Rule 60(b), these principles should be kept in mind as well as the axiom that the law does not favor a forfeiture, and the statement of Chief Justice Marshall in United States v. Feely, Fed.Cas.No.15,082, 1 Brock. 255, that "The object of a recognizance is not to enrich the treasury * * *."

■ Considering, first, the question raised by the Government concerning the proper forum, it is necessary to examine the rule. Upon appeal the appellate court may be in a position to exercise its discretion and certainly it has the power to review the action of the District Court in exercising discretion. I find no provision for such discretion in the appellate court until after the motion has been considered in the District Court. Rule 60 is contained in the "Federal Rules of Civil Procedure for the United States District Courts" and is captioned "Relief from Judgment or Order". That rule, so far as pertinent here, reads as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * *; (6) any other reason justifying relief from the operation of the judgment."

The motion is timely made. See Klapprott v. United States, supra.

Turning to what appears an analogous rule, we find in Federal Rules of Criminal Procedure for the United States District

Courts, Rule 46, 18 U.S.C.A., which is captioned "Bail in Criminal Cases". Rule 46(f)(2) reads as follows:

"Setting Aside. The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture."

Continuing, Rule 46(f)(4) reads as follows:

"Remission. After entry of such judgment (for enforcement of forfeiture of bail bond), the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision."

█ The rule then proceeds to provide for exoneration of the obligors and release of bail. When the nature of the penalties are considered, it would seem that a situation such as the one before the Court clearly falls within the provisions of 60(b)(6) by vesting in the District Courts the power to apply equitable principles consistent with the ends of justice to the enforcement of a final judgment based upon a statutory forfeiture. A further analogy may be found in the power of the District Court in remitting forfeitures in libel cases. The more familiar type of such cases involves the forfeiture of motor vehicles engaged in violating the Internal Revenue laws. From a consideration of the language of the rules it would seem that the analogy to the last mentioned type of proceeding is somewhat close, especially as it involves procedure. In libel proceedings the guilt or innocence of the vehicle is first determined and it is only after such detremination or judgment that the Court is authorized to remit the forfeiture. In the instant case Rule 60(b) deals with a *final judgment*. The District Court was without power to remit or reduce the forfeiture before final judgment. The rule provides for motion before the District Court after final judgment. That is precisely the situation here. It follows that the District Court

is the proper forum to entertain the motion. The motion was made within proper time and the District Court has the power to grant relief upon such terms as are just and for any reason justifying relief from the operation of the judgment.

As before indicated, it was my conclusion after the hearing that the defendants were in violation of the "False Claims Act". That question has been determined. It was also my opinion as before indicated that the circumstances of the case were such that the enforcement of the forfeiture in the amount fixed by statute would penalize the defendants far beyond the degree commensurate with their culpability. At my request counsel sought but were unable to point to authority under which I could reduce the forfeiture. While Rule 60(b) was not called to my attention, it would appear that at that time the rule was not applicable since final judgment had not been entered. The appellate proceeding followed, during which time the District Court had no jurisdiction. It is now back before the District Court on motion properly made. See Sprague v. Ticonic Nat. Bank, 307 U.S. 161, at pages 169, 170, 59 S.Ct. 777, 83 L.Ed. 1184.

██ This brings us to a consideration of the merits of the motion. Unless the defendants are relieved of a portion of the forfeiture, they will be penalized far beyond what would be reasonable. As stated, they realized a profit. In United States ex rel. Marcus v. Hess, supra, the Supreme Court expressed the opinion that the statute is remedial and not criminal. The Court also indicated the view that the remedy should be commensurate with the gain. We are also again reminded of the principle quoted previously to the effect that the object of the recognizance is not to enrich the treasury. The same observations apply to a forfeiture. In considering an application for relief, these principles should be borne in mind and the situation of the individual as well as that of the Government is to be considered. Had the Government elected to proceed criminally in this case, the burden upon it

would have been to prove guilt beyond a reasonable doubt. Had a conviction followed, the Court would have determined the penalty. Since it elected to proceed civilly, it was required to prove its case only by a preponderance of the evidence and the amount of forfeiture was fixed by statute. As the trier of facts in this case, I was conscious of this rule of evidence and determined the factual issues accordingly. In undertaking to reach a determination of what the ends of justice require, it is my conclusion that the defendants should be relieved of the final judgment upon condition that they pay the sum of $20,000 in satisfaction of the judgment. In reaching this amount I have in mind the profit of $8,208.39 realized and the further fact disclosed by the record that this litigation has been protracted and of necessity costly. The payment of this amount, coupled with normal expenses incident to representation of counsel, court costs, etc., would constitute a penalty fully commensurate with the actions of the defendants and the gains realized by them.

I am not unmindful of the fact that C.C.C. actually sustained a substantial loss. I realize that in addition to the principle referred to in United States ex rel. Marcus v. Hess, supra, that the remedy should be commensurate with the gain, there is another principle equally meritorious that the Government should by reimbursed for losses sustained by the actions of a wrongdoer. This is a sound principle commonly observed in remitting portions of the forfeiture in criminal bail bond cases. Under ordinary circumstances it should be followed here. I am also aware of the fact that the Government should not be penalized for the actions of its employees. However, considering the facts of this case, it is not believed that the defendants should be penalized to the extent of saving the Government harmless. C.C.C. could have either (1) sold the cotton at a profit, or (2) accepted from the defendants repayment of the amount advanced by C.C.C. as loans. Were this litigation between private individuals, the well-known principle concerning mitigation of damages would preclude the plaintiff from being heard to assert any claim for this loss. With the option of selling the cotton at a profit or of accepting from the defendants the amount advanced and thereby precluding possibility of loss, although urged to act, they refused to do either. In criminal prosecutions restitution does not necessarily await the trial. There was no reason for a different rule here.

From some of the language in Toepleman v. United States, considered with Cato Bros., Inc. v. United States, 263 F.2d 697, supra, it might appear that my failure to award damages for the loss in the first instance was erroneous. However, I am not familiar with the details of the Toepleman case upon this point and it is not now an issue in this case. In any event, it is to be remembered that at this stage I am not fixing the legal rights and obligations of the parties to the controversy prior to judgment. I am now undertaking to determine what the ends of justice require with respect to the enforcement of a final judgment. There is a striking similarity to the function of the Court in determining the appropriate fine or other penalty to be imposed upon one found guilty of violating a penal statute. In both situations the object to be attained is the fixing of a penalty commensurate with the offense and consistent with the ends of justice. In so doing the situations of both the defendants and the Government must be examined in the light of all the circumstances. While the defendants should not be relieved of the consequences of their acts they should not be penalized for acts of employees of the Government. If a proper way is open to save to the delinquent his pound of flesh that way should be followed, unless the interests of the public demand the application of a harsher rule. The facts of this case, as shown by the record, do not demand a greater penalty than that indicated.

An order in conformity with the views here expressed will be entered upon presentation.