**UNITED STATES of America,**
**Plaintiff,**

v.

**BEATRICE FOODS COMPANY,**
**Defendant.**

**No. NC 38–69.**

United States District Court,
D. Utah, N. D.

July 29, 1971.

---

1. *See* Nowak v. Collins, 437 F.2d 1303 (3rd Cir. 1971); Keibler v. Selective Service Local Board No. 170, 3 S.S.L.R. 3294 (N.D.N.Y. March 4, 1970).

C. Nelson Day, U. S. Atty., Salt Lake City, Utah, Marquis L. Smith, Robert J. Staal, and Shirley Z. Johnson, Mark F. Anderson, Dept. of Justice, San Francisco, Cal., for plaintiff.

Earl A. Jinkinson and Richard W. Austin, Chicago, Ill., for defendant.

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT II OF THE COMPLAINT

CHRISTENSEN, District Judge.

This is an action brought by the United States of America against Beatrice Foods Company for an alleged antitrust conspiracy (Count I of the Complaint), and submission of false claims (Count II).

Under Section 4A of the Clayton Act (15 U.S.C. § 15a), the Government is

permitted to recover actual damages, if any, proximately caused by violation of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1). The False Claims Act (31 U.S.C. § 231) provides that one making a false claim "shall forfeit and pay to the United States the sum of $2,000 and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act * * * * "

Defendant has moved the court to dismiss Count II of the complaint herein, raising the question whether the Government's exclusive remedy for acts constituting a violation of the Sherman Act is for single damages provided by Section 4A of the Clayton Act to the exclusion of forfeitures and double damages authorized by the False Claims Act.

Arguing that the legislative history of Section 4A, the sequence of the enactments, and the special scope of the later statute all indicate a congressional intent to limit the Government to single damages for injuries resulting from acts constituting a violation of the antitrust laws, the defendant observes that it has been unable to find a published decision on the question. The Government has questioned the defendant's argument on all points, as well as its conclusion and contends that United States v. Carnation Company, 163 Trade Cases ¶ 70,695 (Wash.1963), has dealt squarely with the question raised contrary to defendant's contention. Since, however, United States v. Carnation was in a somewhat different context and was based upon the single authority of United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1942), which I do not regard as dispositive, it has been concluded that the question should be re-examined in the light of the circumstances of the present case.

This is an action for damages and injunctive relief initially brought against two other companies in addition to Beatrice Foods Company. The former no longer are parties by reason of settlement stipulations and order. Jurisdiction of the court is involved under Section 4A of the Clayton Act, 15 U.S.C. § 15a, the False Claims Act, 31 U.S.C. §§ 231–235, and Section 4 of the Sherman Act, 15 U.S.C. § 4.

Plaintiff claims that the defendant, Beatrice Foods Company, operating under the trade name "Meadow Gold", entered into a conspiracy with other conspirator dairies in restraint of trade and commerce in dairy products sold in the State of Utah and parts of the states of Idaho and Colorado in violation of Section 1 of the Sherman Antitrust Act, and that the terms of the conspiracy included the fixing, raising, maintaining, and stabilizing of list prices and discounts, the submitting of collusive and rigged bids to a variety of institutions, including federal agencies, and the allocation, rotation and division of the dairy product business. Plaintiff further claims that the conspiracy resulted in its having to pay higher prices for dairy products in certain of its institutions than it would have paid in a market in which free and open competitive competition prevailed and that plaintiff is therefore entitled to its actual damages under Section 4A of the Clayton Act as sought in Count I of the complaint or, in the alternative, to double its actual damages under the False Claims Act, 31 U.S.C. § 231–235, as sought in Count II of its Complaint.

Plaintiff asserts that it is entitled also to $2,000 for each false claim presented or caused to be presented by the defendant; it asserts that as a part of the alleged unlawful conspiracy, and pursuant thereto, the defendant and other conspirators, agreed to present, and did present, to the plaintiff and received payment for claims which were false within the meaning of the False Claims Act in that claims were made pursuant to contracts which had been entered into subject to collusive and rigged bids, use of fixed and stabilized list prices and discounts, and collusive allocation, rotation, and division of dairy product business.

Denying that it or any of the other persons referred to in the complaint entered into or became members of a conspiracy and further denying that any such conspiracy was in restraint of interstate trade or commerce or arose in interstate commerce or had any substantial effect thereon, the defendant also claims that neither it nor any of the other persons mentioned in the complaint presented or caused to be presented to plaintiff for payment or approval any false claims. It is further asserted by the defendant that plaintiff has not been injured in its business or property within the meaning of the Clayton Antitrust Act and defendant denies that the plaintiff has suffered any damages within the meaning of the False Claims Act. It is also alleged by way of affirmative defenses, among other things, that the acts of the defendant and the other persons referred to in the complaint, are exempt from liability under the Sherman Act pursuant to the provisions, among others, of the Capper Volstead Act, Section 6 of the Clayton Act, the Agricultural Marketing Act, the Cooperative Marketing Act, and the Agricultural Marketing Agreement Act.

In Pre-Trial Order Number Two dated January 22, 1971, the court granted leave to the defendant to file a motion for dismissal based upon the contention under discussion reserved in such pre-trial order as issue of law 7(d). The parties at this pre-trial conference agreed that the determination of this question should be made in the light of briefs to be filed by the respective parties and upon the basis of the record already before the court. While the pre-trial order left open "the issue of whether such an objection or defense has been waived under the Federal Rules of Civil Procedure", I now see no basis for any contention of waiver. We are thus brought to the merits of the motion to dismiss.

Defendant points out that the passage of Section 4A of the Clayton Act in 1955 (15 U.S.C. § 15a), was a somewhat belated response of Congress to the decision of the Supreme Court in United States v. Cooper Corporation, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941), in which it was held that the United States was not a "person" entitled to maintain a treble damage action within the meaning of Section 7 of the Sherman Act. Congress apparently believed that the Government should be entitled to recover damages under the Sherman Act, but that it did not need the incentive of treble damages to enforce its own laws, and therefore should be limited to single damages for antitrust violations.

From the premise defendant entertains the assumption that Congress intended the Sherman Act to be the exclusive remedy for any unlawful conspiracy within its scope, and particularly that if damages are recoverable by the Government under the Sherman Act for acts done in furtherance of a conspiracy, those damages must be limited to single damages despite the provisions authorizing double recovery and penalties under the False Claims Act.

Nothing can be found in legislative history nor on the face of the respective statutes indicating a congressional intent to repeal or limit the application of the False Claims Act whenever a conspiratorial agreement in violation of the antitrust act would be implemented or consummated by the filing of false claims. Both acts can be and should be given effect unless there is a clear and manifest indication to the contrary. We find no irreconcilable conflict even though both acts may be directed to the same sphere of conduct. See United States v. Borden Co., 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181 (1939).

Had Congress in passing Section 4A intended to preclude application of the False Claims Act to conduct also constituting an antitrust violation, it would not have been difficult, and it would be expected for it, to so indicate either in the amendment itself or at least in the legislative history. The legislative history is confined to general discussions of the desirability of permitting the Government to recover for violations of

the Sherman Antitrust Act but to limit recovery for such violations to single damages. The frame of reference was to violations of the Sherman Antitrust Act as such and did not indicate directly or indirectly that the amendment would preempt all other remedies.[1]

The defendant calls attention to only one reference to the False Claims Act in the legislative history of Section 4A. During hearings before the Subcommittee on Study of Monopoly Power of the Committee on the Judiciary of the House of Representatives, 82nd Congress, First Session, on H.R. 3408 (a predecessor of H.R. 4954 upon which Section 4A was based), Mr. H. Graham Morrison, Assistant Attorney General in Charge of the Antitrust Division, Department of Justice, on April 9, 1951, stated: "[W]e have no objection to limiting the Government's recovery to actual damages. In fact, we strongly support this provision and urge its prompt enactment. * * * " Chairman Celler and Mr. Morrison then exchanged the following information:

"THE CHAIRMAN. Before you get to your summary would you care to answer the following: Is there anything new or novel in triple damage suits?

"MR. MORRISON. No Mr. Chairman that is not novel to this extent: The Civil Fraud Statutes of the United States do not provide for triple damages, but they provide for double damages, plus $2,000 civil penalty for each separate violation and transaction.

"THE CHAIRMAN. That may amount to far more than triple damages, may it not?

"MR. MORRISON. Yes indeed; and that, may I say, Mr. Chairman, goes far beyond the origins of the Sherman Antitrust Act. That goes back to Civil War days."

The defendant relies upon Schaefer et al. v. First National Bank of Lincolnwood, 326 F.Supp. 1186 (N.D.Ill.1970). In that case plaintiffs brought suit for damages resulting from a stock manipulation conspiracy under two counts, the first relying upon the Securities and Exchange Act of 1934 and the second upon Section 1 of the Sherman Act. The court dismissed the Sherman Act count as preempted by the SEC count. The court reasoned that a stock market manipulation fell primarily within the ambit of the Securities Acts and that although that legislation preserved other remedies it expressly prohibited use of such other remedies to obtain more than actual damages. Reference was made to Section 28(a) of the Securities and Exchange Act of 1934 which reads:

"The rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this title shall recover * * * a total amount in excess of his actual damages on account of the act complained of. * * * "

Thus, *Schaefer* is clearly distinguishable. There the latest act clearly expressed a legislative intent to limit recovery to single damages. There is no such intent manifested directly or indirectly in the case at bar. Nor does it appear reasonable here to assume that it was the congressional intent that double damages and forfeitures could be recovered for false claims when fraud only was involved but when both fraud and conspiracy were involved only single damages could be recovered. *See* General Motors Accept. Corp. v. United States, 286 U.S. 49, 52 S.Ct. 468, 76 L.Ed. 971

1. 101 Cong.Rec. 5129–33; 84th Congress, 1st Sess., U.S.Code Cong. & Ad.News, pp. 2328–33, S.Rep.No.619 (accompanying H.R. 4954); H.R.Rep.No.422, 84th Cong., 1st Sess. (accompanying H.R. 4954); *see also* letter from U. S. Attorney General to Speaker of the House, Jan. 20, 1955 *id.* at 5; Hearings on H.R. 3408 Before the Subcomm. on the Study of Monopoly Power of the House Comm. on the Judiciary, 82nd Cong., 1st Sess., pt. 3, at 1 (1951).

(1932); *see also* United States v. American Motor Boat K–1231, 54 F.2d 502 (2d Cir.1931), and United States v. Bruno, 25 F.Supp. 793 (D.N.J.1938).

■■■ An analysis of the two acts in question indicates that Congress intended to accomplish different purposes by each. Section 4A was adopted for the purpose of affording the Government the right to sue for damages arising from anti-competitive practices injuring its business or property. The False Claims Act was adopted almost one hundred years earlier "to protect the funds and property of the Government from fraudulent claims". Rainwater v. United States, 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958). The chief purpose of the statute was "to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole." United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). I accept the Government's position that "while the statutes are different in purpose, they remain nevertheless harmonious in the sense that both are addressed to making the Government whole when it has been cheated through sharp practices. In that sense they are 'auxiliary' within the meaning of the *Borden* case where it was said to be insufficient for an implied repeal 'to establish that subsequent laws cover some or even all of the cases provided for by [the prior act]'; for they may be merely affirmative, cumulative, or auxiliary." *See also* United States v. Rohleder, 157 F.2d 126 (3d Cir. 1946).

Defendant argues that a more specific statute should prevail over a general one and that Section 4A was passed for "the specific purpose of giving the United States the right to recover single damages for injuries resulting from acts that constitute a violation of the antitrust laws." Such an argument is two-edged since it would seem that the False Claims Act was passed for the specific purpose of giving the United States the right to recover double damages plus forfeiture for injuries resulting from a fraudulent claim. A more meaningful inquiry is whether there can be found any indication or intent from the statutes that there should be excluded from recovery under the False Claims Act, if the elements of liability thereunder are established, acts which also constitute, because of other elements, violation of the Sherman Act. It has been concluded that there is no such indication or intent.

Practical as well as conceptual considerations dictate a denial of defendant's motion to dismiss Count II. It has already been noted in the statement of the case that the defendant asserts that it has not become a member of any conspiracy, that no such conspiracy which may be found to exist was in restraint of interstate trade or commerce, that any claim which may be stated is barred in whole or in part by the applicable statutes of limitation, that acts of the defendants or some of them are exempt from antitrust liability pursuant to certain other statutes, that there has been no violation of Section 1 of the Sherman Act, and that there has not been any concerted action by two or more persons or companies who are not exempt from the provisions of the Act.

Without assuming at this time to pass upon the validity of any of these defenses, it is apparent that if they are valid and sustained there can be no liability finally determined with reference to the Sherman Act. Granting of the motion to dismiss now before the court accordingly would leave the Government remediless even though it might otherwise prove the elements of a violation of the False Claims Act and even though the very premise of the defendant's argument in the motion to dismiss would have been negated by a ruling on the merits.

■■ In short, it is my opinion that the passage of Section 4A was not intended to limit or preclude the Government's right to recover damages or for-

feitures under the False Claims Act, but rather to extend its right under the antitrust laws in view of the preclusive effect of the Supreme Court's decision in United States v. Cooper Corporation, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941), *supra*. As thus viewed, there is no warrant to employ that section as a device to prevent the recovery of damages, if any, from false claims of a type which were already recoverable at the time of the enactment of 4A. Of course, the government cannot recover for the same injuries both under the Sherman Act and the False Claims Act. But such questions as the extent of reasonable damages, alternate recoveries, election, and related problems and procedures are not germane to the present motion and can be more profitably considered at the final pre-trial conference, or at the trial.

The defendant's motion to dismiss Count II of the Complaint is hereby denied.