UNITED STATES of America,
Plaintiff,

v.

Stanley SILVER, Defendant.

No. 74–C–113.

United States District Court,
E. D. New York.

Oct. 22, 1974.

David G. Trager, U. S. Atty., E.D.N. Y., for plaintiff; Howard J. Stechel, Asst. U. S. Atty., Mark A. Cymrot, Atty., Fraud Section, Civil Div., Dept. of Justice, Washington, D.C., of counsel.

DiFalco, Field & O'Rourke, New York City, for defendant; Arthur N. Field, New York City, of counsel.

BARTELS, District Judge.

This action was brought by the United States, pursuant to 31 U.S.C. § 232, to recover statutory forfeitures under the False Claims Act, 31 U.S.C. §§ 231–235. The parties have stipulated all material facts and both now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C. The facts are, briefly, as follows: The defendant Stanley Silver was president of Intertech Industries, Inc. ("Intertech"), a manufacturer which supplied ordnance replacement parts to the Armed Forces of the United States pursuant to several Government contracts. Intertech held the prime contracts but employed subcontractors for the two contracts involved in this action. The trouble began when in January, 1970, Intertech filed a petition in bankruptcy under Chapter XI, 11 U.S.C. § 701 et seq., and continued operations.

The bankruptcy judge, in order to assure payment to the subcontractors and thereby secure their continued work on the contracts, required Intertech to assign and it did assign the proceeds of each contract with the Government to a separate bank in each case, which agreed to distribute the progress payments, received from the Government, between the subcontractors and Intertech. The subcontractors were entitled to 52% of these proceeds and Intertech was entitled to 48% thereof.

Because this arrangement caused delay in the ultimate receipt of the proceeds by the subcontractors and Intertech, each bank provided Intertech with a letter of authorization to pick up the next progress payment check due, made payable to each bank, directly from the Government, thereby eliminating the mailing time from the Government to the banks. Thereafter Silver, without authority, photostated these original letters and collected from the Government the remaining progress payment checks by changing only the date on each letter, but failed to deliver the same to the banks. Twelve Treasury checks, totalling $117,768.87, were obtained by Silver in this manner. Upon receipt of each check, Silver forged the endorsement of an officer of the payee-bank and deposited the check into an Intertech account at a different bank. Through normal banking channels, the checks were presented to and honored by the United States Treasury and the proceeds were credited to the Intertech account. Although the subcontractors were not paid their share of the checks at that time, they were ultimately made whole by Silver. Consequently, it is conceded that the United States suffered no actual damages as a result of the defendant's actions.

The Government charges that the defendant's actions violated the False Claims Act and accordingly seeks, pursuant to 31 U.S.C. § 231, $2,000 for each of the twelve checks with forged endorsements. Section 231 provides that:

> "Any person . . . who shall make or cause to be made, or *present*

*or cause to be presented,* for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States . . . knowing such claim to be false, fictitious, or fraudulent . . . shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit . . . ." (Emphasis added.)

The defendant claims that his actions do not come within the terms and purpose of the False Claims Act because (1) the checks were not the types of claims contemplated by Congress in enacting the statute, (2) each check was a valid one issued to a proper payee for a debt actually owed by the Government, and (3) no damages were sustained by the United States.

The defendant bases his first claim on the purpose of the Act as evidenced by its history. The False Claims Act was originally enacted in 1863 to protect the Government from the existing practice of billing the Government for necessities of war at exorbitant prices or for non-existent or worthless goods. United States v. McNinch, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). In 1878 the criminal provisions of the Act were codified in R.S. § 5438, and the civil provisions were codified in R.S. § 3490, which permitted the Government to recover forfeitures and damages for the same acts prohibited in § 5438 by incorporating that section by reference. In 1948 the criminal provisions were altered and recodified in 18 U.S.C. §§ 287, 1001, while the civil provisions remained unaltered and codified in 31 U.S.C. § 231. See United States v. Neifert-White Company, 390 U.S. 228, 228 n. 1, 230 n. 3, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968); Rainwater v. United States, 356 U.S. 590, 590 n. 1, 592 n. 8, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958); United States v. Klein, 230 F.Supp. 426, 430 (W.D.Pa. 1964), affirmed, 356 F.2d 983 (3d Cir. 1966).

■ The Supreme Court has said that the congressional purpose behind the False Claims Act was to "protect the funds and property of the Government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were made." Rainwater v. United States, *supra,* 356 U.S. at 592, 78 S.Ct. at 948. In short, the purpose was to stop the "plundering of the public treasury." United States v. McNinch, *supra,* 356 U.S. at 599, 78 S.Ct. 950. While it is clear that the False Claims Act was not designed to reach every kind of fraud practiced on the United States, United States v. McNinch, *supra,* at 599, 78 S.Ct. 950; United States v. Cochran, 235 F.2d 131 (5th Cir.), cert. denied, 352 U.S. 941, 77 S.Ct. 262, 1 L. Ed.2d 237 (1956); United States v. Marple Community Record, Inc., 335 F. Supp. 95 (E.D.Pa.1971), it is equally clear that its purpose was to reach "all fraudulent attempts to cause the Government to pay out sums of money." United States v. Neifert-White Company, *supra,* 390 U.S. at 233, 88 S.Ct. at 962. See also United States v. Marple Community Record, Inc., *supra,* 335 F. Supp. at 99. In distinguishing the kinds of actions which constitute claims against the Government within the meaning and intent of the Act and those which do not, the Supreme Court held in United States v. Neifert-White Company, *supra,* 390 U.S. at 232, 88 S.Ct. at 961:

"[In *McNinch*] [t]his Court held that since FHA 'disburses no funds nor does it otherwise suffer immediate financial detriment,' . . . the transaction was not within the ambit of the False Claims Act. The Court emphasized the distinction between contracts of insurance against loss such as those involved in *McNinch,* and transactions in which the United States pays or lends money. For purposes of the present case, we need not reconsider the validity of this distinc-

tion. It is sufficient to note that the instant case involves a false statement made with the purpose and effect of inducing the Government immediately to part with money."

■■ It is apparent that the scope of the Act was not meant to be limited to the narrow one suggested by the defendant of proscribing only the particular evil of cheating the Government by means of billing for worthless or non-existent goods or at exorbitant prices. Instead, any actions which have the purpose and effect of causing the Government to immediately pay out money are clearly "claims" within the purpose of the Act. Several cases clearly indicate that the presentation or causing the presentation of a Treasury check has such purpose and effect. United States v. Fowler, 282 F.Supp. 1 (E.D.N.Y.1968); United States v. Scolnick, 219 F.Supp. 408 (D.Mass.1963), affirmed, 331 F.2d 598 (1st Cir. 1964). Therefore, Silver's actions clearly constituted the causing of the presentation of "claims" against the Government within the Act.

■ The defendant argues that even if these checks are "claims" within the meaning of the Act, they are not false, fictitious, or fraudulent because each check was validly issued to a proper payee for a debt actually owed by the Government to that payee. However, because Silver knew that he was "wholly unauthorized to present and demand or receive any money on" each check, although each was an originally valid claim, his claims were clearly false, fictitious, or fraudulent under the Act. Dimmick v. United States, 116 F. 825, 828 (9th Cir. 1902). By forging the payee's endorsement Silver clearly misrepresented the material fact of his identity with a clear intent to deceive the United States and is thus guilty of fraud as that term has been defined for the purposes of the Act. United States v. Farina, 153 F.Supp 819, 822 (D.N.J. 1957); Cahill v. Curtiss-Wright Corp., 57 F.Supp. 614, 616 (W.D.Ky.1944).

■ Finally, the defendant argues that his actions are not within the scope of the Act because the United States suffered no actual damages as a result. But here the United States was clearly exposed to potential double liability on the amounts of the checks and the mere fact that an attempted fraud is discovered and as a result of that discovery all parties are ultimately made whole cannot alter the nature of Silver's actions. To so hold would make the Act dependent upon the success of the fraud and would do little to carry out the function of the Act, which was to discourage and prevent such actions. Thus, in several cases forfeitures were allowed without the existence or proof of actual damages. United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L. Ed. 443 (1943); Fleming v. United States, 336 F.2d 475 (10th Cir. 1964), cert. denied, 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965); United States v. Rainwater, 244 F.2d 27 (8th Cir. 1957), affirmed, 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958); United States v. Tieger, 234 F.2d 589 (3d Cir.), cert. denied, 352 U.S. 941, 77 S.Ct. 262, 1 L.Ed. 2d 237 (1956); United States v. Rohleder, 157 F.2d 126 (3d Cir. 1946). See also United States v. Ridglea State Bank, 357 F.2d 495, 497 (5th Cir. 1966); Toepleman v. United States, 263 F.2d 697, 699 (4th Cir.), cert. denied sub nom. Cato Bros., Inc. v. United States, 359 U.S. 989, 79 S.Ct. 1119, 3 L. Ed.2d 978 (1959).

■ Therefore, the defendant's actions clearly come within the terms of the statute and the United States is entitled to recover the statutory forfeitures even though it has not suffered actual damages. Since the presentation of each check constitutes a claim within the meaning of the statute, the United States is entitled to twelve forfeitures, totalling $24,000. United States v. Fowler, *supra*; United States v. Scolnick, *supra*. See also United States ex rel. Marcus v. Hess, *supra*, 317 U.S. at 548, 63 S.Ct. 379.

Defendant's motion for summary judgment is hereby denied and plaintiff's motion is hereby granted.

This is an order.