

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2009

# Arnold v. CMC Engineering

Precedential or Non-Precedential: Precedential

Docket No. 07-1617

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Arnold v. CMC Engineering" (2009). *2009 Decisions.* Paper 1280.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1280

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1617
_____

THE UNITED STATES DEPARTMENT OF
TRANSPORTATION, ex rel. AUGUST W. ARNOLD,
an individual


v.


CMC ENGINEERING; ERDMAN ANTHONY ASSOCIATES,
INC.; L. ROBERT KIMBALL & ASSOCIATES;
M.A. BEECH; MACKIN ENGINEERING; MCTISH,
KUNKEL & ASSOCIATES; MICHAEL BAKER, JR., INC;
SAI CONSULTING ENGINEERS, INC;
VE ENGINEERING, INC.


                               August W. Arnold,
                                Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 03-cv-1580)
District Judge: Honorable Gary L. Lancaster
_____

Argued January 6, 2009

Before: FUENTES and FISHER, <u>Circuit Judges</u> and PADOVA,[*]
<u>District Judge</u>

(Opinion Filed: May 5, 2009 )

Jon Pushinsky (Argued)
1808 Law & Finance Building
Pittsburgh, PA 15219
*Attorney for Appellant*

Efrem M. Grail (Argued)
Colin E. Wrabley
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219
*Attorneys for Appellee Michael Baker, Jr., Inc.*

John G. Ebken (Argued)
Eugene A. Giotto
John R. Leathers
Buchanan, Ingersoll, & Rooney PC
One Oxford Centre
40th Floor
Pittsburgh, PA 15219
*Attorneys for Appellee L. Robert Kimball & Associates, Inc.*

Jonathan K. Hollin (Argued)
Paul A. Logan
Powell, Trachtman, Logan, Carrle and Lombardo, P.C.
475 Allendale Road
King of Prussia, PA 19406
*Attorneys for CMC Engineering and Erdman Anthony Associates, Inc.*

---

[*] Honorable John R. Padova, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

-2-

Ira L. Podheiser
Burns, White & Hickton, LLC
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212
    *Attorneys for Mackin Engineering, Inc.*

Bradford Dorrance
Keefer Wood Allen & Rahal, LLP
210 Walnut Street
P.O. Box 11963
Harrisburg, PA 17108-1963
    *Attorney for VE Engineering, Inc.*

Steven D. Irwin
David V. Weicht
Leech Tishman Fiscaldo & Lampl, LLC
Citizens Bank Building, 30th Floor
525 William Penn Place
Pittsburgh, PA 15219
    *Attorneys for McTish, Kunkel & Associates*

James R. Hanke
Beverly A. Block
Sherrard, German & Kelly, P.C.
28th Floor, Two PNC Plaza
620 Liberty Avenue
Pittsburgh, PA 15222
    *Attorneys for SAI Consulting Engineers, Inc.*

Jason M. Yarbrough
Thomas A. Berret
Jessica R. Quinn-Hogan
Meyer, Unkovic & Scott
1300 Oliver Building
Pittsburgh, PA 15222
    *Attorneys for M.A. Beech*

Charles W. Scarborough (Argued)
Thomas M. Bondy

-3-

Amy Easton
Department of Justice
Civil Division, Room 7244
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-3001
      *Amicus Curiae for the Court*

---

OPINION OF THE COURT

---

FUENTES, <u>Circuit Judge</u>:

In this <u>qui</u> <u>tam</u> action, filed by August Arnold, the Relator alleges that the Defendants, consultants who provided services to the Pennsylvania Department of Transportation ("PennDOT"), falsified their credentials to qualify for higher pay rates. Arnold contends that, as a result, the consultants defrauded the federal government, which funded the contracts at issue, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729. On motions to dismiss, the District Court concluded that claims presented to state agencies that disburse federal funds are not actionable under the FCA, and because Arnold failed to allege that the consultants' false claims were presented to or approved by the federal government, as opposed to the state agency, they were not actionable.

While this appeal was pending, the United States Supreme Court decided <u>Allison Engine Co. v. United States ex rel. Sanders</u>, 128 S. Ct. 2123 (2008), which held that the method by which federal funds are disbursed by federal grantees is relevant to determining whether a defendant possessed the requisite intent to defraud the federal government as required by the FCA. Because the District Court did not have the benefit of <u>Allison Engine</u> when it ruled on the instant matter, we will vacate and remand for further proceedings.

**I.**

-4-

August Arnold is a retired PennDOT employee. While at PennDOT, one of Arnold's duties was to conduct field audits of consultants who provided engineering and inspection services on road and bridge projects for PennDOT. Defendants Michael Baker, Jr., Inc.; L. Robert Kimball & Associates, Inc.; CMC Engineering; and Erdman Anthony Associates, Inc. (collectively "consultants") were among the engineering consultants subject to the audit, which spanned from 2000 until 2002. The audits uncovered significant overcharges to PennDOT for services performed by individuals who worked on behalf of the consultants. Specifically, the audits disclosed that the consultants submitted bills for services by individuals who did not possess the requisite credentials to justify their hourly pay rates under the consulting contracts at issue. Arnold alleges that PennDOT officials knowingly overpaid the consultants because of systemic corruption, which included prohibited gift-giving in exchange for the hiring and payment of unqualified contract personnel. At least eighty percent of PennDOT's funding for the contracts originated from the Federal Highway Administration, which is a branch of the United States Department of Transportation ("U.S. DOT").

Arnold's disclosure of the overpayment ultimately led to an independent review, which revealed that over twenty percent of the consultants examined during the review had flawed credentials. As a result, some of the consultants returned a portion of the overpayments to PennDOT.

In October 2003, Arnold, as the Relator on behalf of the federal government, filed a qui tam complaint in the United States District Court for the Western District of Pennsylvania, asserting claims against the six consultants under the FCA. The complaint alleged that the consultants were engaged in a fraudulent scheme to obtain overpayments for engineering, inspection, and consultant services on federally-funded highway projects administered by PennDOT. The United States declined to intervene.

The consultants moved to dismiss, arguing, among other things, that Arnold had insufficiently alleged that the consultants had presented false claims to the federal government. As the real party in interest, the federal government filed two Statements of

-5-

Interest in the District Court opposing the consultants' motions to dismiss. The District Court granted Arnold leave to amend his complaint twice, and each time the consultants renewed their motions to dismiss.

On February 7, 2007, the District Court granted the consultants' motion to dismiss the Second Amended Complaint. The District Court stated that the FCA imposes liability only on those who defraud the federal government, further noting that "[t]he sine qua non of [the FCA] is Federal government involvement in paying, approving, or allowing false claims." U.S. Dep't of Transp. ex rel. Arnold v. CMC Eng'g, No. 03-1580, 2007 WL 442237, at *4 (W.D. Pa. Feb. 7, 2007). The District Court concluded that Arnold "ha[d] not established that any defendant presented a false claim to the [f]ederal government, made a false statement in order to get a false claim paid or allowed by the [f]ederal government, or conspired to get a false claim paid or allowed by the [f]ederal government." Id. at *1. The District Court further held that because the FCA requires that the fraudulent claim be presented to the federal government, not a grantee of federal funds, it was irrelevant that PennDOT receives substantial funding from U.S. DOT. Id. at *3. The District Court similarly ruled that Arnold's allegation that PennDOT is an agent of U.S. DOT was insufficient, as was his allegation that the false claims were presented to the federal government when Federal Highway Administration inspectors reviewed PennDOT project sites and logs. Id. Arnold filed a timely Notice of Appeal.

As we previously noted, while this appeal was pending the United States Supreme Court decided Allison Engine Co. v. United States ex rel. Sanders, 128 S. Ct. 2123 (2008), in which a unanimous Court held that the funding mechanism by which fraudulent claims prompt the disbursement of federal funds via a federal grantee is instructive in determining whether a relator has stated a claim under the FCA. Following this decision, the consultants asked this Court to summarily affirm the District Court's dismissal of this case. We denied the motion.

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review of the District Court's order granting the consultants' motion to dismiss. Santiago v. GMAC Mortgage Group, Inc., 417 F.3d 384, 386 (3d Cir. 2005). When reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), we accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them, and we affirm the order of dismissal only if the pleading does not plausibly suggest an entitlement to relief. Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 321-22 (3d Cir. 2008).

## III.

Originally enacted in 1863, the FCA is the most frequently used of a handful of current laws creating a form of civil action known as "qui tam." Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 768 (2000). "Qui tam is short for the Latin phrase qui tam pro domino rege quam pro se ipso in hac parte sequitur, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" Id. at 768 n.1. In modern practice, "qui tam actions are brought by private plaintiffs on behalf of the Government in exchange for some portion of any resulting damages award." Rodriguez v. Our Lady of Lourdes Med. Ctr., 552 F.3d 297, 299 n.1 (3d Cir. 2008). Those private plaintiffs are referred to as "relators." United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 (3d Cir. 2004).

Under the False Claims Act, any person is liable to the United States government for a civil penalty who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or

-7-

used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . .

31 U.S.C. § 3729(a) (emphasis added).

Because the word "presents" is missing from §§ 3729(a)(2) and (a)(3), there has been significant debate about whether there is a "presentment" requirement in those subsections. For example, in United States ex rel. Totten v. Bombardier Corp., the D.C. Circuit held that §§ 3729(a)(2) and (a)(3) do require direct presentment to the federal government. 380 F.3d 488 (D.C. Cir. 2004); see also United States ex rel. DRC, Inc. v. Custer Battles, LLC, 472 F. Supp. 2d 787, 790 (E.D. Va. 2007) (endorsing Totten's holding that § 3729(a)(2) requires presentment); United States ex rel. Atkins v. McInteer, 345 F. Supp. 2d 1302, 1304-05 (N.D. Ala. 2004) (holding that § 3729(a)(3) requires presentment). However, in United States ex rel. Sanders v. Allison Engine Co., the Sixth Circuit held that §§ 3729(a)(2) and (a)(3) do not require direct presentment. 471 F.3d 610, 614-15 (6th Cir. 2006), vacated by 128 S. Ct. 2123 (2008); see also United States ex rel. Mikes v. Straus, 84 F. Supp. 2d 427, 432 (S.D.N.Y. 1999) (excluding the "presentment" requirement from the elements of §§ 3729(a)(2) and (a)(3)). See generally United States ex rel. Farmer v. City of Houston, 523 F.3d 333, 338 (5th Cir. 2008) (discussing the unsettled nature of whether there is a presentment requirement in § 3729(a)(2) but deciding the case on other grounds). The "presentment" requirement compels the relator to establish that the defendants presented the false claim to the federal government to induce payment based on that fraudulent claim. To resolve the conflict between the Courts of Appeals, the Supreme Court granted certiorari in Allison Engine.

In Allison Engine, the United States Navy had contracted with two shipbuilders, both private companies, to build destroyers. The shipyards then subcontracted with a company, Allison Engine, to build the generators for the ships. Allison Engine then

subcontracted with various other companies to build and assemble component parts of the generators. Employees of one of the subcontractors sued under the FCA, alleging that the invoices submitted by the subcontractors to the shipyards were fraudulent. However, the relator did not establish at trial that the invoices had been submitted to the Navy (i.e., the federal government). Therefore, the issue in Allison Engine was whether it was sufficient for an FCA claim that government funds, given to the shipyards by the Navy in advance and disbursed by the shipyards at their discretion without further federal government involvement, were used to pay fraudulent claims. See 128 S. Ct at 2126-27.

The Supreme Court first examined the statutory language and noted that § 3729(a)(2) requires that the defendant make a false statement "to get" a fraudulent claim paid by the government. The Court found that "to get" denoted intent to induce the federal government to pay a false claim. Moreover, the Court noted that getting a fraudulent claim "paid by the government" is not the same as getting a fraudulent claim "paid by government funds." Id. at 2128. The Court specifically stated that "[e]liminating th[e] element of intent . . . would expand the FCA well beyond its intended role of combating 'fraud against the Government.'" Id. (quoting Rainwater v. United States, 356 U.S. 590, 592 (1958)). If the scope of the FCA was not limited in this manner, the Court speculated that liability under the FCA could attach to fraud against any institution that receives at least some federal grants. Id.

Similarly, § 3729(a)(3) makes liable any person who "conspires to defraud the Government by getting a false or fraudulent claim" paid. Like § 3729(a)(2), the Supreme Court read this subsection to require that the conspirators intend to defraud the federal government, rather than conspiring to defraud another entity which uses or disburses government funds. Id. at 2130. Again, the Court noted that it was not implying a "presentment" requirement into § 3729(a)(3), but rather requiring that a relator establish that the conspirators agreed that the false statement "would have a material effect on the [federal] Government's decision to pay the false or fraudulent claim." Id. at 2130-31.

Although the Court held that there is no direct presentment

requirement in §§ 3729(a)(2) and (a)(3), the Court described indirect methods of federal government involvement in the payment of fraudulent claims that could still meet the requirements of the FCA. Without question, Allison Engine categorically precludes liability under the FCA when fraudulent claims induce private entities to disburse federal funds over which the private entity has complete control. In other words, if the federal government provides money in a lump sum to a grantee, and is thereafter uninvolved in the disbursement of the funds, the FCA does not apply. However, the Court left open the possibility that, if the federal government is somehow involved in the grantee's disbursement of federal money, FCA liability may exist. The Court used the following hypothetical to explain: a subcontractor creates an invoice that relies on a false statement, and the subcontractor submits that invoice to the prime contractor; the prime contractor relies on the subcontractor's invoice to generate its own invoice, which the prime contractor submits to the federal government. Under this scenario, the subcontractor intentionally used a false claim to induce payment by the federal government, albeit indirectly. Id. at 2130. Therefore, the subcontractor's actions would fall within the ambit of the FCA.

Of particular note is the manner with which the Court distinguished the facts of Allison Engine, emphasizing that the grantee of federal funds was a private, not public, entity. For example, the Court stated, "[i]f a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim 'by the Government.'" Id. at 2130 (emphasis added). Similarly, the Court noted, "[r]ecognizing a cause of action under the FCA for fraud directed at private entities would threaten to transform the FCA into an all-purpose anti fraud statute." Id. (emphasis added). With regard to the conspiracy prong of the FCA, the Court stated that "[u]nder [§ 3729(a)(3)], it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government. Instead, it must be shown that the conspirators intended 'to defraud the Government.'" Id. (emphasis added). In

-10-

other words, it is not sufficient for a plaintiff to allege merely that the false statement's use resulted in getting paid with funds traceable to the Government. Rather, a plaintiff asserting a claim under §§ 3729(a)(2) and (a)(3) must allege that the defendant intended to use the false record or statement to be paid by the government, not by any other party.

It is unclear how much, if at all, the difference between public grantee versus private grantee should drive a court's analysis. Regardless, we believe that this distinction further supports our holding that Allison Engine casts doubt on the District Court's decision to categorically exclude false claims made to state transportation agencies, which are funded in large part by the federal government, from the purview of the FCA.

Allison Engine does not conclusively determine the outcome of Arnold's case, but it is instructive. Examining Arnold's claims under the rubric of Allison Engine, it is clear that the mechanism of the funding scheme by which PennDOT pays its contractors is determinative of whether the District Court's dismissal of the claims was appropriate. If the Federal Highway Administration was involved in the disbursement of funds from PennDOT to the consultants upon submission of the fraudulent claims in any way, Arnold's claims may be actionable under the FCA and it is possible the consultants' motion to dismiss should have been denied. In light of Allison Engine, the District Court should reconsider its view that a relator can never successfully allege violations of the FCA as they pertain to state transportation agencies.

## IV.

For the reasons stated, we will vacate and remand for further proceedings consistent with this opinion.