Albert John FERN, Jr., John T. Flanna-
gan, Robert Jeffrey, Donald Koppen-
haver, James H. Powell, Robert Louis
Stirm, Max E. Thompson, Jack Trahan,
David E. Walentowski, individually,
Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 180–87C.

United States Claims Court.

Oct. 6, 1988.

Mattaniah Eytan, San Francisco, Cal. attorney of record, for plaintiffs.

Mary Mitchelson, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, attorney of record, for defendant. Captain Robert E. Rigrish, Office of the JAG, Dept. of the Army, of counsel.

## MEMORANDUM OPINION

LYDON, Senior Judge:

Plaintiffs are retired members of the armed forces who claim their property, retired pay, was improperly taken from them by section 1002 of the Uniform Services Former Spouses Protection Act, Pub.L. No. 97–252, (codified at 10 U.S.C. § 1408(c)(1) (1982) (Supp. III 96 Stat. 718) (1985) (the Act or USFSPA)). Specifically, plaintiffs contend that the Act was responsible for a reduction in their military retired pay, as a result of state court divorce proceedings, in violation of the United States Constitution.

Both parties have moved for summary judgment. There are no material issues of fact in dispute and the matter for decision is clearly a question of law. After considering the parties' submissions the court, following oral argument, concludes that defendant's motion for summary judgment should be granted.

Prior to the Act's passage on September 8, 1982, effective February 1, 1983, state courts were precluded by federal pre-emption from awarding spouses in divorce cases any portion of the non disability military retirement pay received by, in this case, their ex-husbands. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). The Act, in effect, overruled the *McCarty* holding by removing federal pre-emption and placing state divorce courts in the same position they were in on June 25, 1981, the day before the *McCarty* decision, relative to the treatment of military retired pay. As a result, prior to February 1, 1983, plaintiffs' military retired pay was immune from apportionment in divorce proceedings. Subsequent to the Act, however, state courts, on petitions from plaintiffs' ex-spouses, apportioned plaintiffs' military retired pay as part of divorce proceedings. As a result, plaintiffs thereafter received less of their retired pay. This reduction in their retired pay, resulting from state court decrees apportioning said pay with plaintiffs' ex-spouses, constitutes, in plaintiffs' view, an improper taking of their property.

In their first amended complaint (¶ 32), plaintiffs articulate the theory of their case in pertinent part as follows:

It is a violation of the "takings" clause of the Fifth Amendment for the Con-

gress in the Act, by means of lifting the bar of preemption [sic] and the application of federal law, so as to allow the application to state community property principles at the time of divorce, to convert current pay, which is otherwise not divisible under the laws of the community property states, into a species of property and then by means of the intended retroactive application of the Act to allow the community property states to deprive plaintiffs of substantial portions of such property. In the alternative, the retroactive application of the Act, so as to deprive plaintiffs of matured rights to earned pay, constitutes an unjustified impairment of the implied contractual arrangement between plaintiffs and the United States, by which plaintiffs would be entitled to the entirety of their retired pay, after having earned it by 20 years of active duty service, as theirs alone.

## Statement of Facts

In its unpublished Memorandum Opinion, *Fern v. United States*, No. 180–87C (Cl.Ct. Jan. 22, 1988) (denying defendant's motion for summary judgment), the court set out in detail the facts relating to each plaintiff in this litigation. All of those facts will not be repeated herein. Instead, only those facts necessary to place the issues before the court in perspective will be set forth hereinafter.

Plaintiff John T. Flannagan enlisted in the Navy in 1959, served a total of 20 years, and retired in November 1979 with the rank of Lieutenant Commander. Plaintiff Donald Koppenhaver enlisted in the Air Force in 1957, served a total of 20 years, and retired in August 1977 with the rank of Major. Plaintiff David E. Walentowski enlisted in the Marine Corps in 1963, served a total of 24 years, and retired in July 1987 with the rank of Master Sergeant. Plaintiff Robert D. Jeffrey enlisted in the Air Force in 1960, served a total of 20 years, and retired in May 1980 with the rank of Lieutenant Colonel. Plaintiff Max E. Thompson enlisted in the Navy in 1944, served a total of 26 years, and retired in June 1970 with the rank of Commander. Plaintiff Jack F. Trahan enlisted in the Air Force in 1941, served a total of 24 years, and retired in April 1965 with the rank of Major. Plaintiff Robert Louis Stirm enlist-

ed in the Air Force in 1953, served a total of 24 years, and retired in June 1977 with the rank of Colonel. Plaintiff Albert John Fern enlisted in the Army in 1950, served a total of 29 years, and retired in June 1979 with the rank of Colonel. Plaintiff James H. Powell enlisted in the Army Air Corps in 1940, served a total of 20 years, and retired in 1960 with the rank of Lieutenant Colonel.

In support of their motion for summary judgment, each plaintiff submitted a signed Declaration. In these Declarations, plaintiffs state that throughout their years of military service they believed the Government had made them an offer of military retired pay in exchange for serving 20 or more years and that each of them accepted that offer by continuing to serve in the military. Plaintiffs further state that throughout their years of military service they also believed that their retired pay was the personal entitlement of each of them. This belief, plaintiffs state, was supported in part by the following factors: The anti-assignment statutes which governed military pay; oral and written communications from the military services and from their superior and fellow officers; and their understanding that military retired pay was not a pension but was in fact wages or current pay for remaining in the special status of retired officer. This special status, the plaintiffs maintain, subjected them, among other things, to recall to active duty at any time.

Plaintiffs further declare that as the dates of each retirement drew near, each expected that his military retired pay would be his property alone, a factor of special significance to each of them. For each plaintiff relied on his retired pay to provide him with a set monthly income, thereby relieving him of the burden of having to concern himself with finding employment immediately upon retirement from the military. Plaintiffs also relied on their retired pay to augment their income once they did find private sector employment.

Plaintiffs, in their complaint classify themselves into three groups. In the first group, (First Cause of Action), identified as

"final-decree plaintiffs", are John T. Flannagan, Donald Koppenhaver, and David E. Walentowski. Final-decree plaintiffs are those who secured a state court divorce decree that, in substance, awarded all interest in plaintiffs' retirement pay to plaintiffs. In the second group (Second Cause of Action), identified as "omitted-asset plaintiffs", are Robert Jeffrey, Max E. Thompson, and Jack Trahan. Omitted-asset plaintiffs are those who obtained a state court divorce decree that neither divided plaintiffs' retired pay between plaintiffs and their spouses nor specifically awarded the same to plaintiffs. In other words, the original decrees made no reference to plaintiffs' retired pay.[1] In the third group, (Third Cause of Action), identified as "pre-*McCarty* divorced plaintiffs", are Robert Louis Stirm, Albert John Fern, and James H. Powell. Pre–*McCarty* divorced plaintiffs are those who were divorced prior to the United States Supreme Court's decision in *McCarty*.[2] The pre–1980 divorce decrees of Stirm and Fern's apportioned their expected retirement pay between them and their spouses. Powell's divorce decree, dated February 2, 1965, was silent as to any apportionment of his retirement pay. Subsequently, however, a state court decree, entered on October 1, 1980, apportioned Powell's retirement pay between him and his former spouse. After the *McCarty* decision, Stirm and Fern stopped paying any portion of their retired pay to their ex-spouses. After the *McCar-*ty decision, a Texas appeals court set aside a trial court's division of Powell's retirement pay between him and his former spouse.

The specifics and the litigation history of the divorce decrees of each plaintiff, as indicated earlier, are recorded in the court's unpublished Memorandum Opinion, *Fern*, No. 180–87C, pp. 4–12, and are deemed incorporated herein by reference.

Each of the states in which plaintiffs obtained their divorce decrees was a community property State (California, New Mexico, Texas, and Washington). Subsequent to passage of the Act, each of the plaintiffs' former spouses petitioned applicable state courts seeking an award of a portion of their former husbands' retirement pay attendant to their prior divorce decrees. Plaintiffs' former spouses were successful in this regard. The various state courts found the Act to be operative subsequent to June 25, 1981.

Each plaintiff in his Declaration states that he had no idea his retired pay would be made subject to state community property law by retroactive application of the USFSPA. Plaintiffs Stirm, Fern and Powell declare that after the *McCarty* decision they believed their retired pay could not be divided or apportioned because of federal pre-emption. Each plaintiff declares he relied at all times on the assurances of the Government that if he completed 20 years

---

**1.** Plaintiff Jeffrey's Declaration, however, notes that his 1976 divorce decree did not raise the matter of his retirement pay. In 1979, however, his ex-spouse sued for a share of his retirement pay and was awarded a portion of it. As a result of the decision in *McCarty*, an Appeals Court in Texas subsequently reversed this award to Jeffrey's ex-spouse. Similarly, apportionment of the retired pay of plaintiffs Thompson and Trahan was not allowed, subsequent to the original divorce decrees, on the basis of the *McCarty* holding.

**2.** On June 26, 1981, the United States Supreme Court decided *McCarty*. The case held, in simple terms, that, in the absence of specific federal statutory authority, state courts could not legally treat military retirement pay as available for distribution purposes in divorce proceedings since federal law had pre-empted state law in this area. In so holding, however, the Supreme Court noted, in pertinent part, that: "Congress may well decide, as it has in the Civil Service and Foreign Service contexts, that more protection should be afforded a former spouse of a retired service member. This decision, however, is for Congress alone." 453 U.S. at 235–36, 101 S.Ct. at 2742–43.

On September 8, 1982, effective on February 1, 1983, for pay periods beginning after June 25, 1981, Congress did just that with the passage of the Act. The Act's legislative history indicates quite clearly that the purpose of the legislation was to place the state courts in the same position they were in on June 25, 1981, the date before the *McCarty* decision relative to the treatment of military retirement pay in divorce matters. The Act was designed to remove federal preemption in this area. S.Rep. No. 502, 97th Cong., 2d Sess. at 16, *reprinted in* 1982 U.S. CODE CONG. & ADMIN.NEWS 1555, 1596, 1611.

of military service, his retired pay would be his alone. Plaintiffs maintain that if they had known that after putting in 20 years of services, Congress would "change the rules" by allowing their ex-spouses to claim portions of their retired pay, they would not have made the military a career.

Plaintiffs Walentowski (New Mexico), Jeffrey (Texas), Thompson (California), Stirm (California) and Fern (California) declare they did not choose to come to a community property state where each eventually got divorced. These plaintiffs declare they found themselves in these community property states only because the military assigned them to duty there. If, plaintiffs declare, they had been sent to a non community property state, they might not have been forced to give over, by decree of a state court, a share of their retired pay to their ex-spouses.[3]

### Discussion

Plaintiffs present a constitutional attack on the Act. First, plaintiffs contend that the Act, by eliminating federal pre-emption, allowed the states through their court systems, to divide their non disability military retired pay with their ex-spouses as part of divorce proceedings, and thereby effected a taking of their property in violation of the Fifth Amendment of the United States Constitution. Second, plaintiffs argue alternatively that retroactive application of the Act, which resulted in the division of their military retirement pay with their ex-spouses, constituted an unjustified impairment of an implied contractual arrangement between plaintiffs and the United States.

### I. *Taking Claim*

■ Plaintiffs contend that passage of the USFSPA resulted in a taking of their property (i.e., a portion of their military retired pay) in violation of the Fifth Amendment to the Constitution. In order to prevail on their taking claim, plaintiffs must establish that their property was, in fact, taken by the Government for a public purpose. *See Shanghai Power Co. v. United States*, 4 Cl.Ct. 237, 240 (1983), *aff'd.*, 765 F.2d 159 (Fed.Cir.1983), *cert. denied*, 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 243 (1985). This, plaintiffs have not and cannot do.

The basis for their taking claim is the view that Congress reduced the value of their retired pay because the Act permitted state courts to divide service members' retired pay with their ex-spouses in state divorce proceedings. In the case at bar, all division of military retirement pay took place in community property states.

Plaintiffs have not and cannot establish that defendant has taken any of their property. As made clear in a related Senate report, contained in the legislative history of USFSPA, the Act creates:

> [n]o right or entitlement to military retired pay ... [The Act] does not require any division of retired pay by a state court; nor does it prohibit such division. Treatment of such retired pay ... generally would be dependent on the divorce and property laws applied by the courts of the jurisdiction in which a divorce or other related decree is issued.

---

**3.** While plaintiffs naturally stress the subjective nature of the unfairness of having to share a portion of their retirement pay with their ex-spouses, this "unfairness" argument loses some of its appeal when the following statistics are reviewed. Plaintiff Flannagan was in the military service for 20 years. He was married to his ex-spouse for some 19 of those years. During plaintiff Koppenhaver's 20 years of military service; he was married to his ex-spouse for over 19 of those years. During plaintiff Walentowski's 24 years of military service, he was married to his ex-spouse for 16 years. During plaintiff Thompson's 26 years of military service, he was married to his ex-spouse for 12 years. During plaintiff Trahan's 24 years of military ser-

vice, he was married to his ex-spouse for some 20 years. During plaintiff Stirm's 24 years of military service, he was married to his ex-spouse for 19 years. During plaintiff Jeffrey's 19 years of military service, he was married to his ex-spouse for some 15 years. During plaintiff Fern's 29 years of military service, he was married to his ex-spouse for some 24 years. During plaintiff Powell's 20 years of military service, he was married to his ex-spouse for some 18 years. The unfairness implicit in plaintiffs' pleas likewise was undoubtedly voiced by the ex-spouses in seeking a share of their ex-husbands' military retired pay in state court actions.

S.Rep. No. 502, 97th Cong., 2d Sess. 4, *reprinted in* 1982 U.S.CODE CONG. & ADMIN.NEWS 1596, 1598. As the statement just quoted makes clear, there was, as an initial matter, no intent on the Government's part to take plaintiffs' property. Without such an intent, plaintiffs cannot prevail on their taking claim. *See Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 770, 572 F.2d 786, 818 (1978) (Before taking established, must be clear intent by government to take private property.). *See also Berenholz v. United States*, 1 Cl.Ct. 620, 627, *aff'd.*, 723 F.2d 68 (Fed.Cir.1983). If any property could be said to have been taken from plaintiffs, state courts, by virtue of their decrees, must bear responsibility for partitioning plaintiffs' retired pay. The Act did not take, or reduce, plaintiffs' retirement pay. The Act merely removed the federal pre-emption interdict which precluded state courts from considering military retirement pay as marital property subject to division as part of a divorce decree. Under such circumstances, no compensable taking by the Federal Government can be found. *See Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887).[4]

Further, even assuming arguendo that property was taken from plaintiffs, it was taken, not for public use, but for the private use of plaintiffs' ex-spouses. Under these circumstances, the case at bar is not one where the Act forces plaintiffs to bear public burdens which "in all fairness and justice, should be borne by the public as a whole."[5] *See Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

It is established that the government may enact legislation, which adversely affects recognized economic values, without incurring a Fifth Amendment obligation to compensate those adversely affected. *See Thomas v. United States*, 231 Ct.Cl. 984, 986–87 (1982) and cases cited

---

**4.** As the legislative history of the Act makes clear, the Act was designed to promote the public welfare. Contrary to plaintiffs' assertions, the Act does substantially advance valid public interest sufficient to justify the results which occurred subsequent to its passage. *See* S.Rep. No. 502, 97th Cong., 2d Sess. 6, 7, *reprinted in* 1982 U.S.CODE CONG. & ADMIN.NEWS 1596, 1601. *See also* Note, *Closing the McCarty–USFSPA Window: A Proposal for Relief from McCarty Era Final Judgment*, 63 Tex.L.Rev. 497, 516–17 (1984).

**5.** Because plaintiffs cannot establish either that their private property was taken or that it was taken for public purposes, the court need not reach matters discussed by plaintiffs related to the extent to which the Act interfered "with distinct investment-backed expectations," *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Further, it follows that the court need not examine the factors relied on by plaintiffs, and set forth in *Shanghai Power Co.*, which discusses these factors in more detail.

Indeed, plaintiffs' reliance on the *Shanghai Power Co.* case does not help their position. The court in *Shanghai Power* distinguished physical invasions of property, where a taking is more easily found, from "interference arising from some public program adjusting the benefits and burdens of economic life to promote the common good," which is much less likely to be found to be a constitutional taking. *See Penn*

*Central Transportation Co.*, 438 U.S. at 124, 98 S.Ct. at 2659, *Pension Benefit Guaranty Corp. v. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717–18, 81 L.Ed.2d 601 (1984) (Legislative acts adjusting economic life presumed constitutional). The case at bar involves just such economic adjustments to promote the common good.

Moreover, in *Shanghai Power*, which was a stronger case favoring a taking than the case at bar, the court found that no taking had occurred. Indeed, the claimant's expectations in *Shanghai Power*, and the President's unanticipated actions in settling their claims in that case were as great or greater than the expectations and unanticipated actions the plaintiffs stressed in their arguments in the case at bar. Plaintiffs' expectations or anticipations on entering military service that, after serving 20 years or more, they would receive their retirement pay undiluted by any subsequent divorce decree provides a weak foundation on which to rest their constitutional challenge to the Act, in any event. *See Zucker v. United States*, 758 F.2d 637, 638, 640 (Fed.Cir.1985); *See also Norman v. United States*, 183 Ct.Cl. 41, 48–50, 392 F.2d 255, 259–60 (1968), *cert. denied*, 393 U.S. 1018, 89 S.Ct. 622, 21 L.Ed.2d 562 (1969). Likewise, the "inducements" argument (to remain in the military service) they advance in support of their claims has little merit from a constitutional viewpoint. *See Allied–General Nuclear Services v. United States*, 839 F.2d 1572, 1577 (Fed.Cir. 1988); *see also Costello v. United States*, 587 F.2d 424, 425 (9th Cir.1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979).

therein.[6]  Further, laws may be passed which directly or indirectly harm individuals and yet do not violate the Fifth Amendment taking clause. *See Omnia Commercial Co. v. United States*, 261 U.S. 502, 510, 43 S.Ct. 437, 438, 67 L.Ed. 773 (1923). *See also Rogers Truck Line Inc. v. United States*, 14 Cl.Ct. 108, 112 (1987).

In the last analysis, the Act, reasonably construed, was a sovereign act. It was primarily a public and general act of sovereignty performed for the public good. Since the Government was acting within its sovereign capacity in passing the Act, it cannot be held liable for money damages relative thereto. *Air Terminal Services, Inc. v. United States*, 165 Ct.Cl. 525, 536, 330 F.2d 974, 980, *cert. denied*, 379 U.S. 829, 85 S.Ct. 57, 13 L.Ed.2d 38 (1964).

Plaintiffs also argue that the Act eliminated the federal concept defining military retired pay as reduced compensation for reduced current services. *See McCarty*, 453 U.S. 210, 222, 101 S.Ct. 2728, 2736, 69 L.Ed.2d 589 (1981). They add that the Act also permitted the states to consider such retired pay as deferred compensation, subject to division at divorce. Plaintiffs' argument is clearly without merit.

Although the holding in *McCarty* was superceded by the USFSPA, the Supreme Court's discussion in *McCarty* reduced compensation for current services remains viable. *See Cornetta v. United States*, 837 F.2d 473, (Fed.Cir.1988). *See also United States v. Tafoya*, 803 F.2d 140, 142 n. 7 (5th Cir.1986). Plaintiffs stress the fact that their retired pay should be viewed as compensation for current services and thus cannot be subject to reduction in any event. Such a view has no judicial foundation. *See Norman*, 183 Ct.Cl. 41, 49, 392 F.2d 255. *See also Costello v. United States*, 587 F.2d 424, 425 (9th Cir.1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.

2d 296 (1979). The Act provides just such express authority for courts to treat military retired pay under state law and decisions. Further, as discussed previously, the Act neither requires nor prohibits a state court from conceptualizing retired pay as current or deferred compensation. At any rate, plaintiffs have merely attempted to restate their argument that passage of the Act resulted in a division of their military retired pay. Their argument has no further merit when raised indirectly as involving a change in the definition of retired pay, than when raised directly, relative to the divisibility of retired pay. From either perspective, the Government has not taken plaintiffs' property. Plaintiffs have failed to establish a taking claim which warrants the payment of just compensation under the Fifth Amendment to the United States Constitution.

## II. * Retroactivity

As an alternative argument, plaintiffs claim that the Act's retroactive application deprived them of matured or vested rights to earned pay and thus constituted an unjustified impairment of an implied contractual arrangement between plaintiffs and the United States. Further, plaintiffs argue that the Act's retroactive application was illegal, harsh, unanticipated and did not substantially advance any valid federal interest adequate to justify depriving them of the full value of their military retired pay.

As indicated previously, the *McCarty* decision held that absent a federal statute permitting such action, a state court may not order a division of non disability military retired pay as part of a distribution of marital property incident to a divorce proceeding.

On September 8, 1982, Congress passed the Act, effective February 1, 1983, which

---

**6.** Plaintiffs' reliance on *Nollan v. California Coastal Commission*, —— U.S. ——, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) is misplaced. The taking analysis in that case rested on facts involving "a permanent physical occupation" of property, *id.* 107 S.Ct. at 3145, and the Court's resulting discussion of the limits of "legitimate state purposes" was in the context of land use

regulation. *See Nollan*, 107 S.Ct. at 3146–48. At issue in the case at bar is not burdensome regulation of property. *See Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Congress neither authorized nor prohibited action by state courts relative to plaintiffs' property rights.

permitted state courts to divide a service members' retired pay as part of a divorce decree, thereby setting aside the McCarty holding.

Relative to retroactive implications or applications, the Act provided in pertinent part that:

\* \* \* \* \* \*

c)(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

\* \* \* \* \* \*

10 U.S.C. § 1408(c)(1) (1982).

It is clear from its legislative history that the Act's purpose was to place state courts in the same position that they were in before the *McCarty* decision was handed down on June 26, 1981, and thereby remove the effect of the *McCarty* holding. The Act was only designed to remove federal pre-emption in determining the divisibility of military retirement pay in divorce proceedings. *See* S.Rep. No. 502, *supra*, at 1, 16, *reprinted in* 1982 U.S.CODE CONG. & ADMIN.NEWS at 1596, 1611.[7]

Plaintiffs, all of whose initial divorce decrees preceded the effective date of the Act, contend that the Act, as it applied to them, was unconstitutional because it retroactively denied them an interest in retired pay already acquired and not subject to apportionment under the then existing law.[8] Plaintiffs further believe that the Act's retroactive application could not have been anticipated and, in any event, was unduly harsh and oppressive.

■ As an initial matter, plaintiffs' claim that retroactive application of the Act constituted an unjustified impairment of an implied contractual arrangement between plaintiffs and the United States that they would be entitled to the entirety of their retired pay after 20 years of active duty service is without merit. It is settled that there is no property or contractual interest in any anticipated level of military retired pay. The statutory right to retired pay is within the exclusive control of Congress and is always subject to change. *See United States v. Larionoff*, 431 U.S. 864, 867, 869, 97 S.Ct. 2150, 2153, 2154, 53 L.Ed.2d 48 (1977); *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961); *See also Norman*, 183 Ct.Cl. at 48–50, 392 F.2d 255; *Zucker*, 758 F.2d at 638, 640.

---

7. Plaintiffs call the court's attention to statements in a 1988 report of the United States House of Representatives' Armed Services Committee, H.R.Rep. No. 563, 100th Cong., 2d. Sess. at 256, relative to the National Defense Authorization Act for Fiscal Year 1989. The Report expressed the view that it was not Congress' intent in passing the Act in issue to have it applied retroactively. Such statements or views by members of a subsequent Congress specifying the intent of a prior Congress in passing legislation are entitled to little, if any weight. *See Rainwater v. United States*, 356 U.S. 590, 593, 78 S.Ct. 946, 949, 2 L.Ed.2d 996 (1958); *United States v. United Mine Workers*, 330 U.S. 258, 281–82, 67 S.Ct. 677, 690, 91 L.Ed. 884 (1947). Plaintiffs recognize this in their reference to *Haynes v. United States*, 390 U.S. 85, 87, n. 4, 88 S.Ct. 722, 725, n. 4, 19 L.Ed.2d 923 (1968). Plaintiffs state they cite the above report to show a congressional recognition of the unfairness of their present position. The question of unfairness is a two-edged sword as indicated in n. 3, *supra*. Ultimately, the statute's words and its legislative history show that its

passage was not inadvertent and that its intent to operate as it did, i.e., remove federal preemption, relative to the individual circumstances in the case at bar was stated clearly in the Act itself. *See National School of Aeronautics, Inc. v. United States*, 135 Ct.Cl. 343, 350–51, 142 F.Supp. 933 (1956).

8. It appears that plaintiffs' retroactive claim involves the provision of the Act that permits the division of retired pay disbursed between June 25, 1981, the day before the *McCarty* opinion was issued, and February 1, 1983, the effective date of the Act. Essentially, plaintiffs claim that this provision led state courts to retroactively reopen divorce decrees and divide plaintiffs' military retired pay with their ex-spouses. Plaintiffs claim that, absent this retroactive application of the Act, no such division could have occurred. Implicit in plaintiffs' retroactivity claim is the notion that Congress cannot by legislation overcome the holding of the *McCarty* case on which plaintiffs had relied, or at least some of them, in obtaining divorce decrees free of any apportionment of their retired pay.

Plaintiffs have not articulated their retroactivity argument with any degree of clarity in their briefs. It would appear that plaintiffs' contention is that as of September 7, 1982, the day before the Act's passage, each plaintiff had gone through a divorce proceeding and had retained for themselves their entire military retirement pay. The Act, given retroactive effect back to June 25, 1981, resulted in their having to share part of their military retirement pay with their ex-spouses pursuant to state courts' decrees that resulted from reopened divorce proceedings. Plaintiffs challenge the retroactive nature of these circumstances and blame the Act for their occurrence.

What has been said previously applies equally to plaintiff's retroactivity claim. The Act merely removed the interdict of federal pre-emption, thereby allowing state courts to adjudicate rights to military retirement pay in divorce proceedings according to state laws. It was the actions of state courts which apportioned plaintiffs' retirement pay with their ex-spouses, not the Federal Government.

More importantly, a careful reading of the Act and its legislative history suggests that retroactivity is not an element that rationally flows from the Act. The Act does not mandate the disturbance of state court judgments that previously ruled, based on *McCarty*, that military retired pay was not subject to apportionment as part of a divorce decree. The Act merely allows state courts to reconsider judgments or decrees in light of the marital property and procedural laws without the overhanging presence of the *McCarty* holding. After the Act, state courts were free to apply their own law to such apportionment of property suits without interference from the *McCarty* holding or the Act. *See* Note, *Closing the McCarty–USFSPA Window: A Proposal for Relief from McCarty Era Final Judgments*, 63 Tex.L.Rev. 497, 509, 512–513 (1984).[9]

Assuming, arguendo, that the Act was responsible for the dividing plaintiffs' retirement pay and assuming further the retroactive nature of this division of retirement pay, an analysis of case law on the retroactivity issue shows that plaintiffs' retroactivity claim would still be without merit. *See Pension Benefit Guaranty Corp*, 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601.

A. Background Statement

Retrospective legislation has been defined as a law "which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past ... (citation omitted)" *Starges v. Carter*, 114 U.S. 511, 519, 5 S.Ct. 1014, 1018, 29 L.Ed. 240 (1884).

Retrospective legislation must be categorized initially on the basis of whether the legislation is criminal or civil in nature.

1) *Criminal Legislation*

Art. I, section 9, clause 3, of the Constitution prohibits Congress from passing an *ex post facto* law. Art. I, section 10, of the Constitution prohibits a state from passing such a law. The *ex post facto* clause applies only to retroactive criminal legislation, *see Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1793), and forbids enacting any law "which imposes a punishment for an act which was not punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri*, 4 Wall (71 U.S.) 277, 325–26, 18 L.Ed. 356 (1867)). Procedural changes, even if disadvantageous to the defendant, do not come within the purview of the *ex post facto* clause. *See Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). Therefore, although retrospective and involving matters criminal in nature, such procedural changes are,

9. As indicated in the prior unpublished Memorandum Opinion, *Fern*, 180–87C, pp. 5–12, plaintiffs were unsuccessful in state court actions to set aside decrees awarding plaintiffs' ex-spouses portions of plaintiffs' military retirement pay.

These actions were commenced by plaintiffs subsequent to the Act's passage. A number of the plaintiffs appealed these state court decisions unsuccessfully to the United States Supreme Court.

in effect, an exception to the general constitutional prohibition against retroactive criminal legislation.

### 2) *Civil Legislation*

█ Unlike *ex post facto* criminal legislation, retroactive civil legislation is not expressly prohibited by the Constitution. *See* Comment, *Generator Liability Under Superfund For Clean–Up of Abandoned Hazardous West Dumpsites*, 130 U.Pa.L. Rev. 1229, 1247 (1982). Mere retroactive application does not make a civil statute unconstitutional. *Cohen v. Beneficial Industrial Loan Corp*, 337 U.S. 541, 554, 69 S.Ct. 1221, 1229, 93 L.Ed. 1528 (1949). Therefore, retroactive civil legislation is impermissible only if it contravenes a specific provision of the Constitution. *See generally* Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692, 694 (1960). Because the *ex post facto* clause does not apply to civil statutes, to be invalid a civil statute must violate a constitutional provision such as the Due Process Clause of the Fifth Amendment, the equal protection clause or the clause forbidding impairment of contractual obligations. *See* Comment, *Generator Liability Under Superfund For Clean–Up of Abandoned Hazardous Waste Dumpsites*, at 1247. In taking cases involving retroactivity the Supreme Court has also relied on Due Process considerations in reaching a decision on retroactivity issues. *See* 2 Sands, *Sutherland Statutory Construction* § 41.06 at

378 (4th ed. 1973). *See also* Hochman, *supra* note 15, at 694. The Due Process Clause does not prohibit retrospective civil legislation, "unless the consequences are particularly 'harsh and oppressive.' *Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938) (citation omitted)." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 n. 13, 97 S.Ct. 1505, 1515, n. 13, 52 L.Ed.2d 92 (1977).

### B. The USFSPA

"Legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of Constitutionality." *Pension Benefit Guaranty Corp.*, 467 U.S. at 729, 104 S.Ct. at 2717 (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976)). This deference extends to such legislation even if applied retroactively. *See Pension Benefit Guaranty Corp.*, 467 U.S. at 729, 104 S.Ct. at 2717–18. The USFSPA provision involves just such an adjustment of economic benefits and burdens.

However, retroactive legislation does have to meet a burden not faced by legislation having only prospective effect. *See id.* at 730, 104 S.Ct. at 2718. Retroactive legislation must rest on a rational foundation. That burden is met if retroactive legislation, including the type at issue in this case, is justified by a rational legislative purpose.[10] *See id. See also Patlex Corp. v.*

---

**10.** Plaintiffs' claim that the retroactive aspects of the Act necessarily subjected them to some form of heightened judicial scrutiny has been addressed and specifically rejected by the Supreme Court. *See Pension Benefit Guaranty Corp. v. Gray & Co.*, 467 U.S. at 731, 104 S.Ct. at 2717–18. Plaintiffs' reliance on *Nollan* to support its argument of heightened scrutiny, is also without merit. It is worth reiterating (see n. 5, *supra*) that *Nollan* involved the question of determining legitimate state interests, in the context of land use regulation. Without commenting on plaintiffs' characterization of the Government's burden in *Nollan*, it is clear that plaintiffs have confused the case of a physical occupation of property, where a taking is more readily found, *see Shanghai Power Co.*, 4 Cl.Ct. at 242, with a retroactive statute carrying a presumption of constitutionality. *See Pension Benefit Guaranty Corp.*, 467 U.S. 717, 104 S.Ct. at 2711–12. For the same reasons, plaintiffs'

belief that the retroactive provision must meet standards relative to a "substantial government purpose," citing *Penn Central Transportation Co.*, 438 U.S. 104, 127, 98 S.Ct. 2646, 2660, is equally without merit.

Plaintiff also cites *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), for the proposition that finding a "rational" Congressional purpose for retroactive legislation is a separate inquiry from whether property is taken. Reasonably read, the Court in *Security Industrial Bank* did not require heightened scrutiny for retroactive legislation, but merely noted that finding a rational purpose did not end the Court's inquiry. The court has already determined (See Discussion, *supra*) that no property has been taken. Further, the decision in *Railroad Retirement Board v. Alton Railroad Co.*, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468 (1935), cited by plaintiffs is distin-

*Mossinghoff,* 758 F.2d 594, 601 (Fed.Cir. 1985) (determination under Due Process inquiry as to whether legislature used a rational approach to achieve a legitimate end.); *Sperry Corp. v. United States,* 12 Cl.Ct. 736, 743 (1987), *rev'd on other grounds,* 853 F.2d 904 (Fed.Cir.1987) (As long as Congress has some reason for enacting retroactive legislation, it will be considered rationally based).

■ In the case at bar, the legislation's purpose was to remove the federal preclusion effect of the Supreme Court decision in the *McCarty* case and restore the power of state courts to apply state divorce laws to military retired pay. *See* S.Rep. No. 502, *supra,* at 1, 5, *reprinted in* 1982 U.S. CODE CONG. & ADMIN.NEWS at 1596, 1599. By enacting the USFSPA provision, the Congress recognized the unique contributions and significant sacrifices of a military spouse, as a partner in the service member's career and to the national defense effort. *See id.* at 6, *reprinted in* 1982 U.S.CODE CONG. & ADMIN NEWS at 1601. Even the *McCarty* case recognized that the Congress could enact legislation to remove federal pre-emption and thus permit state courts to consider the plight of military wives who are parties in a divorce proceeding. *See* 453 U.S. at 235–236, 101 S.Ct. at 2743.

It has been recognized that the whole subject of domestic relations, in any event, belongs to the laws of the various states. *See Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979). The facts in the case at bar show no violation of any federal statute or regulation and plaintiffs do not cite to any such violations. *Cf. Hisquierdo v. Hisquierdo, supra.*

Plaintiffs grasp the Act's use of the June 25, 1981 date as the basis for their claim that the Act retroactively deprived them of portions of their retired pay. As indicated previously, the Act's purpose was to place state courts in the same position they were in on June 25, 1981 with respect to treatment of non disability military retired pay. *McCarty* was decided on June 26, 1981.

In selecting the June 25, 1981 date, Congress undoubtedly sought to permit state courts to give consideration to those spouses who otherwise might fall between the crack of the period between the date of the June 26, 1981 *McCarty* decision and the effective date of the Act, February 1, 1983. Given its concern for the military spouse, it was rational for Congress to permit those military spouses caught in the interim period to be able to approach a state court for assistance without the bar of federal pre-emption. Under these circumstances, the consequences of the Act cannot be said to be particularly "harsh and oppressive," *United States Trust Co.,* 431 U.S. 1, 17, n. 13, 97 S.Ct. 1505, 1515, n. 13, 52 L.Ed.2d 92 (1977) or "arbitrary and irrational." *See Usery,* 428 U.S. 1, 14, 96 S.Ct. 2882, 2891–92, 49 L.Ed.2d 752 (1976). On the contrary, its retrospective aspect appears to serve a public interest. *See Patlex Corp.,* 758 F.2d 594, 601.

It is clear from a general public policy perspective that it was not unfair to permit an ex-spouse to share in a portion of the service member's retired pay. Moreover, relative to the particular plaintiffs in the instant case, the logic of rejecting plaintiffs unfairness or harsh argument in favor of public policy considerations is most apparent. As discussed previously (see n. 3 *supra*), the ex-spouses were contributing partners in their husbands' careers for substantial portions of the time served by plaintiffs in the military. Indeed, the Supreme Court in the *McCarty* decision took note that "the plight of an ex-spouse of a retired service member is often a serious one." 453 U.S. at 235. The facts in the case at bar illustrate by example the rational Congressional purpose in lifting the bar of federal pre-emption in state court di-

guishable because the statute in the *Alton Railroad* case created pensions for employees already fully compensated. *See Pension Benefit Guaranty Corp.,* 467 U.S. at 733, 104 S.Ct. at 2719–20. *See also Railroad Retirement Board,* 295 U.S. at 354, 55 S.Ct. at 764. (Arbitrary requirement to pay again for service long since rendered and fully compensated is impermissible legislation). In contrast, as previously discussed, the instant case as voiced by plaintiffs, involves compensation for reduced but current services.

vorce proceedings involving military retirement pay.

Observed from another perspective, any retroactive effect of the Act accomplishes a rational purpose. Curative statutes are viewed with favor by the courts even when applied retroactively, *see Patlex Corp.*, 758 F.2d at 603, and any retroactive application is generally entitled to be liberally construed. *See Temple University v. United States*, 769 F.2d 126, 134 (3d Cir.1985). *See also generally*, Hochman, *supra* at 692. "Curative" legislation may be defined as "legislation enacted to cure defects in prior law." *See Temple University*, 769 F.2d at 134 n. 5 (citing 2A C, Sands, *Sutherland Statutory Construction*, § 41.11 at 289 (4th ed. 1973)). *See also Graham & Foster v. Goodcell*, 282 U.S. 409, 429, 51 S.Ct. 186, 193–94, 75 L.Ed. 415 (1930) (Curative statute designed to remedy mistakes and defects in the administration of government). The retrospective aspects, if such there be, of the USFSPA, was intended to aid in curing a defect in the rights afforded military spouses, and, therefore, can easily be viewed as a "curative statute." Accordingly, the case for upholding the Act against constitutional attack is given added weight.

Plaintiffs argue that the retroactive nature of the Act denied them due process because they had no advance notice of a change in the law brought about by the Act. However, assuming, arguendo, that such notice is constitutionally compelled, *see Pension Benefit Guaranty Corp.*, 467 U.S. at 731–32, 104 S.Ct. at 2719, indications of possible changes in the law were evident in the *McCarty* opinion itself. Plaintiffs in their briefs highlight their reliance and related expectations on the *McCarty* decision. In pertinent part, the Supreme Court stated in *McCarty* that:

> [w]e recognize that the plight of an ex-spouse of a retired service member is often a serious one ... Congress may

well decide, as it has in the Civil Service and Foreign Service contexts, that more protection should be afforded a former spouse of a retired service member. This decision, however, is for Congress alone.

*McCarty*, 453 U.S. at 235–36, 101 S.Ct. at 2742–43.

Plaintiffs, therefore, had indications of the possibility of legislative proposals in this area and could reasonably infer that such proposals could have retrospective aspects. *See Pension Benefit Guaranty Corp.*, 467 U.S. at 732, 104 S.Ct. at 2719. Further, plaintiffs were, or should have been, on notice that in other areas of government service Congress had decided that State law should apply to the division of retired pay.[11] *See Sperry Corp.*, 12 Cl.Ct. 736, 743. *See also McCarty*, 453 U.S. at 230–31; S.Rep. No. 502 at 1, *reprinted in* 1982 U.S.CODE CONG. & ADMIN.NEWS at 1596. Finally, plaintiffs' brief which sets forth a judicial case history of military retired pay manifests the trend in case law and legislation, especially at the state level, to provide ex-spouses with an opportunity to obtain a portion of military retired pay as part of a divorce proceeding. The Act was a light at the end of a tunnel that was visible long before the Act itself became a reality.

In contrast with these objective indicia of notice, plaintiffs argue subjectively that they could not anticipate changes in law which could affect their military retired pay. Such subjective characterizations are difficult to prove or disprove. As a general observation, the vagaries of life should never be unanticipated, and for military personnel, this rule is all the more apparent. In this regard it should be noted that the plaintiff in the *Shanghai Power* case relied on by plaintiffs did not anticipate that the Government would substantially reduce the value of plaintiffs' claim by settlement

---

11. Plaintiffs further argued in their brief that they could not have anticipated, either when recruited or during their twenty (20) years of military service, that the law relative to military retired pay would be altered. However, in their brief, plaintiffs do concede that "the right to receive existing salary and other emolument of government employment does not represent vested property rights subject to constitutional protection." By so doing, plaintiffs have merely recognized the established principle that "there is no vested right to federal employment or to the privileges of retirement thereby." *Norman*, 183 Ct.Cl. at 49.

thereof without plaintiffs' consent. Moreover, in view of the observation in *Norman,* 183 Cl.Ct. at 48–50, that military service members' pay is always subject to alteration, plaintiffs' subjective cries of unanticipated changes and vested expectations are entitled to little weight. *See Costello,* 587 F.2d at 425.

Plaintiffs who obtained their divorce decrees during the period between *McCarty* and the effective date of the Act argue that principles of res judicata barred state courts from reopening their divorce decrees and deciding, on the basis of the Act, to divide their military retired pay. As noted previously, state courts have rejected plaintiffs' argument in this regard. Further, plaintiffs ignore the general proposition that a divorce decree does not have res judicata effect if substantially changed conditions have occurred since the decree's entry. *See* 27A C.J.S. *Divorce* § 264 at 608 (1986). Also, a state court having jurisdiction of a divorce proceeding may for good cause shown, and within its discretion, set aside or modify its own judgment at a later time. *Id.* § 239 at 531. See in this regard Note, *Closing the McCarty—USFSPA Window: A Proposal for Relief from McCarty Era Final Judgments,* 63 Tex.L. Rev. 497, 519–530 (1984).

In the case at bar state courts in their discretion, and on the facts and circumstances of each case, must have applied the standard of substantial change of conditions and determined that the prior decrees be reopened.[12] The Act did not create con-

tinuing jurisdiction in state courts, but empowered a state court that otherwise had jurisdiction to divide or not divide retired pay as marital property. *See Steel v. United States,* 813 F.2d 1545, 1548 (9th Cir. 1987). In the materials before the court, plaintiffs have presented no evidence that these state courts abused their discretion or otherwise violated the statutory standards of their jurisdiction in reopening plaintiffs' divorce decrees. Although Congress, in enacting USFSPA, may have invited state courts to reopen divorce decrees, *see* S.Rep. No. 502, *supra,* at 5, *reprinted in* 1982 U.S.CODE CONG. & ADMIN.NEWS at 1599–1600, the Act neither mandated nor required such state action. Therefore, this court finds no evidence that divorce decrees were reopened other than in accordance with the laws of the governing jurisdictions. If plaintiffs had further grounds for pursuing a claim, based on an impermissible reopening of a divorce decree, they should have been raised with the state courts or on appeal to federal courts. In its unpublished Memorandum Opinion, *Fern,* 180–87C, the court set forth in detail plaintiffs' odysseys through the state and federal courts challenging state court decrees dividing their retirement pay. Plaintiffs were unable, as a final matter, to convince any of these courts that division of their retirement pay was unconstitutional or legally improper. This fact is not without some significance.[13]

For the above reasons, plaintiffs' constitutional attack on the retroactive aspects of

---

**12.** For a general discussion of problems associated with state court decisions to reopen divorce decrees after passage of USFSPA, see generally, Note, *Closing the McCarty–USFSPA Window: A Proposal For Relief from McCarty Era Final Judgments,* 63 Tex.L.Rev. 497, 512–515 (1984).

**13.** As more fully discussed in the unpublished Memorandum Opinion, *Fern,* 180–87C, plaintiffs, John T. Flannagan (Flannagan), Donald Koppenhaver (Koppenhaver) and David E. Walentowski (Walentowski), in substance, were initially awarded all interest in their retired pay as part of their state divorce decrees. In state court proceedings subsequent to the Act's passage, the original decrees were reopened to permit apportionment of the retired pay of each of these three plaintiffs. Each plaintiff exhausted state court avenues of appeal and chose not to appeal further. The claims of other plaintiffs,

e.g., Max E. Thompson (Thompson), Jack F. Trahan (Trahan), Robert Lewis Stirm (Stirm), Albert John Fern, Jr. (Fern), and James H. Powell (Powell) went further—to the United States Supreme Court. Plaintiffs therefore had a fair opportunity at that time to fully raise and ventilate their preclusion, i.e., res judicata, issue.

In their brief, certain plaintiffs also raise an issue preclusion, i.e., collateral estoppel, argument, but take an opposite stance relative thereto. Plaintiffs who were divorced before the *McCarty* decision claim that "[b]ut for" the passage of USFSPA, they could have reopened their divorce decrees on the authority of *McCarty* and had the apportionment of their retired pay set aside. Such a convoluted argument is simply speculative and creates a cause and effect sequence of events where none exists.

the Act must be rejected,[14] and their motion for summary judgment, relative thereto, denied.

### Conclusion

For reasons set forth above the court concludes that plaintiffs' motion for summary judgment must be denied and defendant's motion for summary judgment must be granted. The clerk is directed to enter judgment dismissing the complaint. No Costs.

---

**14.** Plaintiffs have raised several other arguments, none of which are deemed applicable to the facts of this case. For example, division of retired pay by community property state courts does not fall within the prohibitions contained in the Anti–Assignment Statute, relied on by plaintiffs, 37 U.S.C. § 701(c) (1976). *See Goad v. United States,* 661 F.Supp. 1073, 1078 (S.D. Tex.1987), aff'd in part and vacated in part, 837 F.2d, 1096 (Fed.Cir.1987), *cert. denied* — U.S. ——, 108 S.Ct. 1079, 99 L.Ed.2d 238 (1988). *See also In Re Marriage of Thomas,* 203 Cal.Rptr. 58, 61–62, 156 Cal.App.3d, 631 (1984). Any comfort plaintiffs may seek to gain from the discussion of 37 U.S.C. § 710(c) by the Supreme Court in *McCarty,* 453 U.S. at 228–32, 101 S.Ct. at 2739– 41 is misplaced since the *McCarty* holding was set aside by the Act, an event that the Supreme Court envisioned. *See id.* at 235–36, 101 S.Ct. at 2742–43. In any event, to the extent that 37 U.S.C. § 701(c) might be viewed as a policy against permitting the division of military retired pay as part of community property, any such view would be erroneous in light of the Congress' passage of the USFSPA, which clearly manifested a contrary intention. Finally, plaintiffs' reliance on an executive order, Exec.Order No. 12,630, 53 Fed.Reg. 8859 (1988), relating to "Governmental Actions and Interference with Constitutionally Protected Property Rights," is misplaced. This order was designed to provide guidance to executive departments and agencies relative to regulatory governmental takings in eight of recent Supreme Court decisions on the power and reach of the exercise of the right of eminent domain. Plaintiffs concede these Supreme Court decisions do not directly bear upon the case at bar they argue, nonetheless, that the cited executive order reflects a breakthrough in governmental sensitivity to taking issues and raises questions as to the continued vitality of prior case law which had been developed in a generational period of lesser sensitivity to governmental actions. The court feels its decision in this case fits comfortably in the area of sensitivity discussed by plaintiffs.

Finally, in a recent case the Supreme Court, holding that division of military retired pay did not violate the separation of powers doctrine nor was the USFSPA unconstitutionally applied retroactively, dismissed the appeal and denied certiorari from a State court decision. *See Brannon v. Randmaa,* 736 S.W.2d 175, 179 (Tex. App.1987), *appeal dismissed, cert. denied,* — U.S. ——, 108 S.Ct. 1990, 100 L.Ed.2d 222 (1988). Without characterizing its specific precedential effect, such dismissal lends further support to the court's conclusions in this case. Indeed, the Supreme Court's action in the *Randmaa* case might well constitute a decision on the merits of the question of USFSPA's constitutionality, and thus might be dispositive of plaintiffs' contentions in this case without more being said. *See Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). *See also* the court's unpublished Memorandum Opinion, *Fern,* 180–87C, pp. 13–15. The court, however, chooses not to rest its decision on this latter ground at this time.