The **GRAND UNION COMPANY**,
Plaintiff,

v.

**UNITED STATES of America**,
Defendant.

Civ. A. No. 80–192.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 29, 1980.

---

Frank C. Jones, Michael Eric Ross, King & Spalding, Atlanta, Ga., for plaintiff.

Myles E. Eastwood, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

The Grand Union Company brought this suit challenging the disqualification of a certain Grand Union retail grocery store from participating in the Federal Food Stamp Program for a period of one year, for accepting food stamps for ineligible non-food items. The government counterclaimed seeking "$156.00 as double damages provided by law and . . . the further amount of $2,000.00 provided by law for each presentation of the aforesaid seventeen (17) food stamp coupons, for a total amount of damages of $34,156.00. . ."

Now before the court is Grand Union's motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted. It appears uncontested that the basis for the counterclaim is the False Claims Act, 31 U.S.C. § 231, which provides for double damages and a penalty of $2,000.00 for the submission of each false claim to the United States. Grand Union takes the position that the False Claims Act was never intended to apply to a retail food store's fraudulent redemption of food stamp coupons.

It is not necessary in this order to recount the legislative history of the False Claims Act. That history has been well outlined in *Rainwater v. United States*, 356 U.S. 590, 592–593, 78 S.Ct. 946, 948–949, 2 L.Ed.2d 996 (1958), and *United States v. Bornstein*, 423 U.S. 303, 305 n. 1, 96 S.Ct. 523, 526 n. 1, 76 L.Ed.2d 514 (1976). As that legislative history shows, what is asserted in the counterclaim is a civil and not a criminal penalty.

■ The Act has been well summarized as follows: "The Supreme Court has said that the congressional purpose behind the False Claims Act was to 'protect the funds and property of the Government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were made.' [Citation]. In short, the purpose was to stop the 'plundering of the public treasury.' [Citation]. While it is clear that the False Claims Act was not designed to reach every kind of fraud practiced on the United States, [citations] . . it is equally clear that its purpose was to reach 'all fraudulent attempts to cause the Government to pay out sums of money.'" *United States v. Silver*, 384 F.Supp. 617, 619 (E.D.N.Y.1974). The New York District Court was quoting in part from *Rainwater*

*v. United States, supra*, 356 U.S. at 592, 78 S.Ct. at 948, which gave a broad reading to the concept "fraudulent claim". This is also the reading given by the Fifth Circuit. *See Peterson v. Weinberger*, 508 F.2d 45, 52–53 (5th Cir. 1975). In short, the Act imposes civil sanctions for the knowing submission to the government of a false claim for money or property. "This remedial statute reaches . . . to all fraudulent attempts to cause the Government to pay out sums of money." *United States v. Neifert-White*, 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1967).

█ The "claim" concept, however, is very important. Not all types of fraud practiced on the government involve "claims" which would cause the government to pay out money or property. Many such non-"claim" cases are cited by Grand Union here, and they are simply inapposite. A method of cheating the government which is accomplished through mechanics other than a claim for money or property simply does not fall under the Act. For example, *United States v. Marple Community Record, Inc.*, 335 F.Supp. 95 (E.D.Pa.1971), involved sending as second class mail items which were not entitled to that economical treatment. That was held not to be a "claim" within the meaning of the Act, because the fraud was not accomplished through billing the United States fraudulently. It was the United States who "billed" for less than it was actually entitled to. In *United States v. Tieger*, 234 F.2d 589 (3rd Cir. 1956), the court ruled that it was not a "claim" to misrepresent a loan in order to obtain the government's consent to insure it under the Federal Housing Act. It was not intended there that any money be paid by the government. Similarly, in *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456 (5th Cir. 1977), the Act was held not to apply because the investigative work for which Equifax billed the government was actually done; the allegation was that this kind of work violated the Anti-Pinkerton Act. Thus, not all dishonest schemes to defraud the government involve a "claim" as specified by the False Claims Act. However, cases such as these are not helpful to Grand Union here.

█ Though neither party discusses it at any length, it seems plain that the mechanics of the Food Stamp Program would fit the "claim" language of the Act. "Coupons issued and used as provided in this chapter shall be redeemable at face value by the Secretary [of Agriculture] through the facilities of the Treasury of the United States." 7 U.S.C. § 2013(a). This seems to contemplate a "claim" by a participating grocery store within the Act.

Because the "claim" test is met, the court turns next to consider whether for any other reason the False Claims Act should be held inapplicable to these facts. Grand Union points out that the Food Stamp Program contains its own civil penalty provision, and argues that therefore the applicability of the False Claims Act was not intended by Congress. The court finds, however, that this conclusion does not follow. One way of phrasing the test which is applicable to deciding whether two statutes may co-exist, is set forth in *Radzanower v. Touche Ross and Company*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992–1993, 48 L.Ed.2d 540 (1976). We should ask whether the statutes are so repugnant to each other that they cannot co-exist; or whether the later one covers the whole subject of the earlier one and is obviously intended to be a substitute; or whether the intention of the legislature to repeal the earlier act was clear and manifest. *Id.* Those tests are not met here. These statutes can co-exist with one another: there is no reason why two civil penalties may not be applied to these violations of the Food Stamp Act.

Neither party has pointed to anything in the legislative history of the Food Stamp Act which would throw substantial light on the intent of Congress. As the Supreme Court has written, Grand Union "encounter[s] head-on the 'cardinal rule . . . that repeals by implication are not favored.' . . . [I]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later

statutes are irreconcilable. . . ." *Morton v. Mancari*, 417 U.S. 535, 549–550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). *Morton v. Mancari* was very recently quoted on this same point by the U.S. Supreme Court: "Moreover, '[t]he courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the court, absent a clearly expressed congressional intention to the contrary, to regard each as effective.' *Morton v. Mancari, supra*, at 551, 94 S.Ct. at 2483." *Andrus v. Glover Construction Co.*, —— U.S. ——, ——, 100 S.Ct. 1905, 1911, 64 L.Ed.2d 548 (1980).

The fact, pointed out by Grand Union, that the government has not applied the False Claims Act in the past to such violations is a provocative point, but is not conclusive on the issue. The cases cited by Grand Union for the proposition that the interpretation of governmental bodies charged with the enforcement of statutes is of great significance, are not too helpful here, because they dealt with actual interpretations advanced and reiterated by governmental entities. What we have here is, apparently, a mere governmental failure to invoke an Act. The court cannot read too much significance into this omission, because it could have multiple causes.

In short, Grand Union has failed to show that the government's counterclaim as a matter of law fails to state a claim for relief. Accordingly, the motion to dismiss the counterclaim is DENIED.

So ORDERED.