**UNITED STATES of America**

v.

**Nhu Minh TRUONG d/b/a Sharif's Supermarket.**

**Civ. A. No. 93–3302.**

United States District Court, E.D. Louisiana.

July 20, 1994.

---

**1138**

Jill L. Ondrejko, Asst. U.S. Atty., New Orleans, LA, for U.S.

Jerome Friedman, Metairie, LA, for Nhu Minh Truong.

---

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

McNAMARA, District Judge.

This matter was tried to the court without a jury on Monday, July 11, 1994. Now, after considering all the evidence and the memoranda of counsel, the court enters the following Findings of Fact and Conclusions of Law. To the extent any Findings of Fact are deemed to be Conclusions of Law, they should be so considered and to the extent any Conclusions of Law are deemed to be Findings of Fact, they too should be so considered.

### FINDINGS OF FACT

1. Sharif's Supermarket is owned by the Hue Long Corporation, and the person primarily responsible for its present operation as well as its operation on all dates pertinent to this litigation, is Nhu Minh Truong.

2. On August 5, 1988, Sharif's Supermarket was authorized to participate in the Food Stamp Program by request of the Hue Long Corporation and its president at that time, Long Trieu Huynh.

3. The application was updated on November 15, 1990, by the Hue Long Corporation at the request of the new president, Nhu Minh Truong.

4. Nhu Minh Truong signed the application to participate in the Food Stamp Program stating that he was the person responsible for overall operation of Sharif's Supermarket, that he understood the Food Stamp Regulations, and that he understood that the United States Department of Agriculture (hereinafter referred to as "U.S.D.A.") could revoke his authorization to participate in the program for any violations of the program regulations by the store or any of its employees.

5. From the period beginning May 28, 1992 through June 10, 1992, Shwanda Johnson, an investigative aide with the U.S.D.A., made three visits to the subject store, and on the last two occasions, food coupons were exchanged for cash by a particular Oriental female at Sharif's Supermarket.

6. Although Shwanda Johnson, on her first trip to Sharif's, purchased a soft drink with food stamps from Nhu Minh Truong and was unsuccessful at attempting to traffic additional stamps, she testified that the same Oriental female who twice later cashed in her food stamps was present at Sharif's on each of the three occasions she visited Sharif's.

7. Specifically, on June 5, 1992, at approximately 10:10 a.m., Shwanda Johnson purchased $7.25 worth of groceries from Sharif's and the cashier who handled this exchange was the same Oriental female who immediately thereafter agreed to and in fact did discount $150.00 in food coupons for $80.00 in cash.

8. Again on June 10, 1992, at approximately 11:45 a.m., Shwanda Johnson was given $100.00 in currency in exchange for $195.00 in food coupons by this same Oriental female at Sharif's Supermarket.

9. This court finds that the Oriental female who discounted food stamps twice at Sharif's was actually present at Sharif's on all three occasions Shwanda Johnson went there. This court also finds that this Oriental female had authority to operate the cash register at Sharif's as she was the person

who checked out Shwanda Johnson and handled the sale to her of $7.25 worth of goods on June 5, 1994. Moreover, on June 10, 1992, this Oriental female immediately brought Mr. Truong the food stamps that she had just discounted for Shwanda Johnson. Thus, this court finds that the Government has proven by clear and convincing evidence that an agency relationship existed between this Oriental female and Sharif's Supermarket.

10. The Government's immediate loss was $345.00.

11. Subsequently, the investigation was suspended pending an investigation at Sound Superette, another store operated by Nhu Minh Truong.

12. On May 5, 1993, Patrick Martinez, an investigator with the U.S.D.A., conducted a post-investigation interview at Sound Superette.

13. At that interview, Ms. Shwanda Johnson and Patrick Martinez identified Ms. Tien Luu, Nhu Minh Truong's sister-in-law, as the person who discounted stamps on June 5, 1992 and June 10, 1992, at Sharif's Supermarket.

14. At Trial, Ms. Shwanda Johnson positively identified Ms. Tien Luu, Nhu Minh Truong's sister-in-law, as the person at Sharif's who discounted the food stamps on June 5, 1992 and on June 10, 1992.

15. On June 28, 1993, a charge letter was prepared and sent to Nhu Minh Truong informing him that there had been two alleged violations of the Food Stamp Act by his store, and that a permanent disqualification from the Food Stamp Program was being considered. This letter was received by him on or about July 8, 1993.

16. On July 30, 1993, the U.S.D.A. informed Nhu Minh Truong that it was their determination that Sharif's Supermarket should be permanently disqualified from the Food Stamp Program, which letter was received by him on or about August 5, 1993.

17. On October 20, 1993, the U.S.D.A. issued a letter to Nhu Minh Truong's attorney informing him that the administrative review he requested of the permanent dis-qualification was completed, and that the disqualification would stand. This letter was received by Truong's attorney on or about October 22, 1993.

18. The store was permanently disqualified from the Food Stamp Program on November 22, 1993, which disqualification was stayed by this Honorable Court.

19. Nhu Minh Truong failed to request a civil money penalty in lieu of a permanent disqualification.

20. Nhu Minh Truong testified that it was his practice to submit for payment all food stamps that his store received in the course of business.

## CONCLUSIONS OF LAW

A. *The False Claims Act*

1. The federal Food Stamp Program provides assistance to eligible low-income households by enabling them "to obtain a more nutritious diet through normal channels of trade by increasing [their] food purchasing power ..." *See,* 7 U.S.C. § 2011.

2. Food stamps received by an authorized retailer are redeemable at face value by the Secretary of Agriculture through the facilities of the Treasury of the United States. *See,* 7 U.S.C. § 2013(a).

3. The purpose of the False Claims Act is to protect the funds and property of the Government from fraudulent claims regardless of their particular form, and has been broadly construed. *United States v. Silver,* 384 F.Supp. 617, 619 (E.D.N.Y.1974), *aff'd.,* 515 F.2d 505 (2nd Cir.1975), quoting *Rainwater v. United States,* 356 U.S. 590, 592, 78 S.Ct. 946, 948, 2 L.Ed.2d 996 (1958). *See also, Peterson v. Weinberger,* 508 F.2d 45, 52–53 (5th Cir.1975); *United States v. Niefert–White, Co.,* 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1968).

4. Acquiring, possessing, and presenting illegally obtained food stamps for redemption constitutes a claim and is a violation within the meaning of the False Claims Act. *See,* 31 U.S.C. § 3729, *et seq. See also, Blusal Meats, Inc. v. United States,* 638 F.Supp. 824 (S.D.N.Y.1986), *aff'd.,* 817 F.2d 1007 (2nd Cir.1987); *Grand Union Co. v.*

*United States,* 495 F.Supp. 331 (N.D.Ga. 1980).

5. The act provides the United States with a cause of action against any person who knowingly: (a) presents, or causes to be presented, a false or fraudulent claim for money or property against the United States; (b) makes or causes to be made a false record or statement to get a false claim paid or approved; or (c) conspires to defraud the government by getting a false claim paid. *See,* 31 U.S.C. § 3729(a)(1)–(a)(3) (Supp. VI 1986).

6. The elements of a false claim are as follows:

   a. That the defendant "knowingly presents or causes to be presented, to an officer or employee of the government a false or fraudulent claim for payment or approval";

   b. That the claim was false or fraudulent;

   c. The defendant knew the claim was false or fraudulent;

   d. That the United States suffered damages as a result of the false or fraudulent claim.

*See,* 31 U.S.C. § 3729(a).

7. "[I]t seems plain that the mechanics of the Food Stamp Program would fit the 'claim' language of the Act. 'Coupons issued and used as provided in this chapter shall be redeemable at face value by the Secretary [of Agriculture] through the facilities of the Treasury of the United States.' 7 U.S.C. § 2013(a). This seems to contemplate a 'claim' by a participating grocery store within the Act." *Grand Union Co. v. United States,* 495 F.Supp. 331, 333 (N.D.Ga.1980).

8. Section 3729(b) of the Act provides: For purposes of this section, the terms 'knowing' and 'knowingly' mean that a person, with respect to information—(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

*See,* 31 U.S.C. § 3729(b). *See also, Blusal Meats, Inc. v. United States,* 638 F.Supp. 824 (S.D.N.Y.1986), *aff'd.,* 817 F.2d 1007 (2nd Cir.1987).

9. "Redemption of wrongfully obtained food stamps constitutes a violation of the False Claims Act, 31 U.S.C. § 3729, as well as the statute governing the Food Stamp Program, in that presentation for payment of the food stamps which were obtained by trafficking constitutes a false or fraudulent claim for payment. The trafficking constitutes a false or fraudulent claim for payment. The trafficking itself constitutes a violation of 7 C.F.R. § 278.2(a)." *See, Figueroa v. United States,* 1991 WL 53872, at Page 3, (E.D.Pa.1991).

10. The False Claims Act "imposes civil sanctions for the knowing submission to the government of a false claim for money or property." *See, Grand Union Co. v. United States,* 495 F.Supp. 331, 333 (N.D.Ga.1980).

11. Liability under the False Claims Act is triple the amount of actual damage suffered by the United States, plus a "civil penalty" of $5,000.00 to $10,000.00 for each violation. *See,* 31 U.S.C. § 3729. *See also, Pena v. United States Department of Agriculture,* 811 F.Supp. 419, 427 (E.D.Ark.1992).

12. Pursuant to 31 U.S.C. § 3729, Hue Long Corporation faces maximum liability of $21,035; that is triple the government's loss, or $1,035, plus $20,000 in civil money penalties, a maximum of $10,000 per false claim.

13. After carefully considering all of the evidence, this court concludes that the Hue Long Corporation shall be imposed a civil penalty of $11,035; this amount represents triple the amount of the government's loss, or $1,035, plus $5,000 for each false claim.

14. Under the False Claims Act, the Ninth, Sixth, and Second Circuits require the government to prove each element by clear and convincing evidence while the Fifth and Eighth Circuits employ a preponderance of the evidence standard. *Federal Crop Ins. Corp. v. Hester,* 765 F.2d 723, 727 (8th Cir. 1985). Regardless of the appropriate standard, this court finds that the government has proven each element of a False Claims Act violation by clear and convincing evidence.

**B.** *Judicial Review of the Permanent Disqualification*

14. In reviewing a finding of the violation set forth by the Food and Nutrition Service, the district court must uphold the finding as valid unless the store owner can prove by a preponderance of the evidence that the agency's determination was factually incorrect. *Goodman v. United States,* 518 F.2d 505, 511 (5th Cir.1975); *Redmond v. United States,* 507 F.2d 1007, 1011–12 (5th Cir.1975), *reh'g. denied,* 510 F.2d 384 (5th Cir.1975). Not only has Defendant failed to prove that the Food and Nutrition Service's determination was factually incorrect, but this court agrees with the agency's findings of violations.

15. A sanction must not be arbitrary and capricious, and will be upheld unless the district court finds to the contrary. *Goodman, supra* at 511–512; *Cross v. United States,* 512 F.2d 1212, 1218 (4th Cir.1975); *Otto v. Block,* 693 F.2d 472 (5th Cir.1982); *Bruno's, Inc. v. United States,* 624 F.2d 592 (5th Cir.1980).

16. When an agency's action adheres to the relevant guidelines, the reviewing court may not overturn the action as arbitrary and capricious. *Bordelon v. Block,* 810 F.2d 468, 471 (5th Cir.1986); *American Fruit Purveyors, Inc. v. United States,* 630 F.2d 370, 373 (5th Cir.1980).

17. The fact that the president of a supermarket may not be involved in violations of the Food Stamp Act does not preclude the store's disqualification from participation in the program. *See,* 7 U.S.C. §§ 2021 and 2023. *See also, Kulkin v. Bergland,* 626 F.2d 181 (1st Cir.1980).

18. Notwithstanding a store owner's personal non-involvement in violation of the Food Stamp Act, the disqualification section of the Act requires only a finding that the store violated any provisions of the Act or regulations issued pursuant to the Act, and an improper sale by a cashier is sufficient to establish a violation. *See,* 7 U.S.C. §§ 2021 and 2023. *See also, Wolf v. United States,* 662 F.2d 676 (10th Cir.1981).

19. There is no requirement that the store owner have knowledge of the employee's trafficking activities in order to impose a permanent disqualification. *See,* 7 C.F.R. § 278.6(e)(1)(i); *Figueroa v. United States,* 1991 WL 53872, at Page 4, (E.D.Pa.1991).

20. If a store owner does not timely request a civil money penalty in lieu of a permanent disqualification, he loses the opportunity to do so, and cannot avoid the permanent disqualification. *See,* 7 C.F.R. § 278.6(i); *Figueroa, supra.*

21. Trafficking is defined as "the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food [items]." *See,* 7 C.F.R. § 271.2.

22. The Food and Nutrition Service "may disqualify any authorized retail store or authorized wholesale food concern from further participation in the program if the firm fails to comply with the Food Stamp Act or this part." *See,* 7 C.F.R. § 278.6(a).

23. "FNS shall take action as follows against any firm determined to have violated the Act or regulations. The FNS regional office shall: (1) disqualify a firm permanently if: (i) personnel of the firm have trafficked as defined in § 271.2." *See,* 7 C.F.R. § 278.-6(e)(1)(i).

24. Accordingly, because this court agrees with the factual determination made by the Food and Nutrition Services and this court finds by clear and convincing evidence that an agent of Sharif's Supermarket trafficked food stamps, the court concludes that the permanent disqualification of Sharif's from the Food Stamp Program was correct.

For the above reasons, Judgment will be entered herein in favor of Plaintiff, the United States of America, and against Defendant, Hue Long Corporation d/b/a Sharif's Supermarket, imposing a civil fine against Defendant in the amount of $11,035.00, affirming the determination by the Food and Nutrition Service to permanently disqualify Defendant from participation in the Food Stamp Program, dismissing Defendant's counterclaim with prejudice, and lifting the Temporary Restraining Order that was entered in this matter on February 28, 1994, which had heretofore prevented Plaintiff from enforcing the administrative order which permanently

disqualified Defendant from participating in the Food Stamp Program.