**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LEWIS B. LYERLY, d/b/a Lyerly's
Market,
<u>Plaintiff-Appellant,</u>

v.

UNITED STATES OF AMERICA; FOOD
AND CONSUMER SERVICE OF THE
UNITED STATES DEPARTMENT OF
AGRICULTURE,
<u>Defendants-Appellees.</u>

No. 97-1076

Appeal from the United States District Court
for the District of South Carolina, at Florence.
William B. Traxler, Jr., District Judge.
(CA-95-3754-4-21)

Argued: July 10, 1997

Decided: August 12, 1997

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Cameron Bruce Littlejohn, Jr., Columbia, South Carolina,
for Appellant. Frances Cornelia Trapp, Assistant United States Attor-
ney, Columbia, South Carolina, for Appellees. **ON BRIEF:** Richard
A. Harpootlian, RICHARD A. HARPOOTLIAN, P.A., Columbia,

South Carolina, for Appellant. J. Rene Josey, United States Attorney, Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lewis B. Lyerly, d/b/a Lyerly's Market, appeals from a judgment awarding actual damages and civil penalties to the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733. For the reasons stated below, we affirm.

Lewis Lyerly is the proprietor of Lyerly's Market, located in Florence, South Carolina. As a retail grocery, the establishment became eligible to participate in the food stamp program in 1979. In April 1994 the Food and Consumer Service (FCS) of the United States Department of Agriculture was tipped off to alleged coupon trafficking at Lyerly's Market. FCS began a sting operation in which undercover investigators sold $180 worth of food stamps to Lyerly's in exchange for $100 in cash, in violation of 7 C.F.R.§ 278.2(a). Lyerly subsequently redeemed these coupons with the government for their face value.

Based on this investigation, FCS decided to revoke Lyerly's eligibility to participate in the food stamp program permanently. Lyerly brought suit seeking judicial review of this decision. The United States counterclaimed for damages and civil penalties under the False Claims Act. The district court affirmed Lyerly's permanent disqualification from the Food Stamp program.[1] The government's counterclaim was tried to a jury, which returned a verdict for the United States. The district court then calculated the damages. First, the court

_____

[1] Lyerly does not contest the disqualification on appeal.

2

found that the United States had suffered $180 in actual damages, which were trebled under 31 U.S.C. § 3729(a). Second, the court awarded a civil penalty of $7500 for each of the three instances of food stamp trafficking. The court thus imposed a total monetary penalty of $23,040.

Three elements must be proven in a claim under 31 U.S.C. § 3729(a)(1): (1) the defendant presented or caused to be presented a claim to an agent of the United States for payment; (2) the claim was false or fraudulent; and (3) the defendant knew it was false or fraudulent. The statute provides for civil penalties "plus 3 times the amount of damages which the Government sustains." 31 U.S.C. § 3729(a). In this appeal Lyerly challenges the award of damages, arguing that the United States never proved that it suffered actual damages from Lyerly's conduct. Lyerly fails to explain, however, the basis for this assertion. The district court determined that the value paid out by the government on the fraudulently sold food stamps, namely, $180, constituted the actual damages from Lyerly's misconduct. See J.A. 251 ("[T]he United States incurred damages in that the payment was made for food stamps that were not used in accordance with the [food stamp program], and the United States lost the face value of the food stamps."). The government provided ample evidence to support this determination. The government's investigative aide testified that she exchanged $180 in food stamps for cash. J.A. 108-11. The parties stipulated that "any food stamps which were received in Lyerly's Market in the time period in question . . . were submitted to the Department of Agriculture for payment as a claim." J.A. 32-33. Another government witness testified that after food stamps are submitted for payment, the retailer's account is immediately credited. J.A. 38. Thus, the government provided evidence that (a) Lyerly accepted $180 in food stamps in exchange for cash; (b) Lyerly submitted these food stamps for redemption; and (c) Lyerly's account was credited for the face value of those food stamps.

Courts have repeatedly calculated the face value of fraudulently sold food stamps as actual damages under the False Claims Act. See Brooks v. United States, 64 F.3d 251, 254 (7th Cir. 1995); United States v. Truong, 860 F. Supp. 1137, 1138-39, 1140 (E.D. La. 1994); Pena v. United States Dep't of Agriculture, 811 F. Supp. 419, 427 (E.D. La. 1992). Lyerly fails to present any authority to the contrary.

3

The only case he cites on this issue, United States v. Hibbs, 568 F.2d 347 (3d Cir. 1977), is inapposite. Hibbs involved a real estate agent who lied on FHA mortgage insurance forms concerning the state of the plumbing, electricity, and heating systems in the mortgagors' homes. The mortgagors eventually defaulted on their FHA-insured mortgages, causing FHA to suffer a loss. The Hibbs court found that the total amount of the defaulted mortgages did not constitute actual damages, because the agent's false claims were too attenuated from the defaults to be deemed the cause of those defaults.[2] Hibbs is distinguishable from this case, since in this case the government directly lost the face value of the food stamps.

We conclude that the $180 paid to Lyerly in exchange for the fraudulently purchased food stamps constituted actual damages to the government. We therefore affirm.

AFFIRMED

_____

[2] The court determined actual damages to be "the decrease in worth of the security that was certified as being available, measured by the difference in value between the houses as falsely represented, and as they actually were." Hibbs, 568 F.2d at 351.

4